BOWERS v. SAN FRANCISCO BRIDGE CO.

(Circuit Court, N. D. California. August 5, 1895.)

1. PATENTS--FAILURE TO PAY FINAL FEE—SECOND APPLICATION.

Under Rev. St. § 4897, providing that any person having an interest in an invention for which a patent was ordered to issue on the payment of the final fee, but who fails to make the payment within six months from the time at which it was allowed and notice thereof sent to the applicant, may, within two years after allowance of the original application, make an application for a patent for such invention, the same as in the case of an original application, but no person shall be held responsible in damages for use of anything for which a patent was ordered to issue under such renewed application prior to the issue of the patent, the second application is not limited to what was allowed in the first patent, but may embrace the whole invention, if this be greater than that allowed.

2. SAME—INJUNCTION.

Injunction pending suit for infringement of patent will not be granted, notwithstanding a judgment for complainant in a suit against another person for infringement of the patent (where defendant is responsible), and evidence and patents (claimed to anticipate plaintiff's) which were not introduced in the former case, have been introduced, the effect of which was submitted to a jury, in an action at law between the parties, resulting in a disagreement of the jury.

Suit by Alphonzo B. Bowers against the San Francisco Bridge Company.

John H. Miller and John L. Boone, for complainant.
M. Delmas and R. Percy Wright, for defendant.

McKENNA, Circuit Judge (orally). This is a suit in equity for the infringement of certain letters patent, and a preliminary injunction is sought. The motion for the latter is made upon the bill and an affidavit of plaintiff and the opinion of this court in Bowers v. Von Schmidt, 63 Fed. 572, and certain testimony taken therein. It is opposed by the answer of defendant, denying the allegations of the bill, and an affidavit of the president of defendant, in reply to the affidavit of Bowers Company, and the record of proceedings in the patent office. The bill alleges that the plaintiff was the first inventor of certain dredging machines, machinery, and appliances, which are described, and that he applied, on the 9th day of December, 1876, for a patent, and, after proceedings had, a patent was ordered to be issued, on the 18th day of April, 1877, upon the payment of the final fee. It is further alleged that the claims which were allowed—

"Did not fully protect plaintiff in the inventions which he had made, and which were disclosed and described in his application, and the said claims were too narrow and too limited, and were not commensurate with the scope of your orator's actual invention; and, for this and other reasons, your orator failed to pay the final government fee within six months, and failed to have said patent issued within said period of time. That thereafter, to wit, on the 26th day of April, A. D. 1879, under and pursuant to the laws of the United States and the rules of the patent office of the United States in that behalf made and provided, your orator renewed his application in said patent office for a patent for said inventions, and filed a renewal application therefor, using the original specifications, oath, drawings, and model, which had been filed in his said original application of December 9, A. D. 1876, and which were then on file in the patent office; and said renewal application was treated and considered by your orator and by the said patent office, and the officials thereof, and the same was, both in law and in fact, a continuation of the said original application."

The bill also alleges that the renewed application was found, upon examination by the proper examiner of the patent office, to contain several independent inventions, and hence separate or divisional applications were made, and, after proceedings had, several patents were issued. The bill contains the usual and proper allegations about all the patents, and states their respective names and titles, and the infringement by the defendant of them. Each patent contains a number of claims; but with this motion we are concerned only with claims 10, 16, 25, 53, 54, and 59 of No. 318,859. For a full description of this patent and these claims I refer to the opinion in Bowers v. Von Schmidt, 63 Fed. 572.

It was asserted at the oral argument, and not denied, that these claims were not in the patent which was ordered to be issued on the 18th day of April, 1877, and not accepted by plaintiff. This will, therefore, be assumed to be true. And from this the defendant concludes and contends that the latter patents were not for the same invention as the former, and hence void, the commissioner having no jurisdiction to issue them. In the beginning, it may be said that against this contention is the action of the patent office in granting the letters, and its rules, which will hereafter be adverted to, providing for the jurisdiction, and what has been aptly called the "silence of the books,"—no case being found in the courts in which the point has been made or passed on. This is strong against its validity. It can hardly be conceived an occasion for making it has not arisen, or that the interest and ingenuity involved in patent litigation should not have discovered or urged its strength, if it had any. It is, however, advanced with earnestness and ability in this case, and the language of the statute is ambiguous enough to exercise and puzzle interpretation. The subject is provided for in section 4897 of the Revised Statutes, which is as follows:

"Sec. 4897. Any person who has an interest in an invention or discovery, whether an inventor, discoverer, or assignee for which a patent was ordered to issue upon the payment of the final fee, but who fails to make payment thereof within six months from the time at which it was passed and allowed, and notice thereof was sent to the applicant or his agent, shall have a right to make an application for a patent for such invention or discovery the same as in the case of an original application. But such second application must be made within two years after the allowance of the original application. But no

person shall be held responsible in damages for the manufacture or use of any article or thing for which a patent was ordered to issue under such renewed application prior to the issue of the patent. And upon the hearing of renewed applications preferred under this section, abandonment shall be considered as a question o. fact."

The ambiguity consists in the meaning of the word "invention" or "discovery." Is it to be confined to that which the patent office allows in the first patent, or may it embrace the whole invention, if this be greater than that allowed? In other words, is the purpose of the new application only to extend the time from six months to two years, to obtain the patent issued, or has it the more substantial and valuable purpose to review his pretensions again, and correct the judgment of the patent office if it was erroneous? The purpose of the patent laws favors the latter view; and, in their ample provisions securing inventors' rights, while protecting the public from imposition or embarrassment, I find nothing inconsistent with it. The rights of inventors are recognized by the constitution, and in executing its provisions the enactments and procedure of the law have been designed to secure to an inventor his whole discovery. To give effect to this purpose, the supreme court, in Grant v. Raymond, 6 Pet. 218, sustained the validity of the reissued patent, before the statutes in words authorized it. The right of amendment has been liberally allowed to the same end. Illustrations of this are found in the case, among others, of Singer v. Braunsdorf, 7 Blatchf. 521, Fed. Cas. No. 12,897, and in the Corn Planters' Case, 23 Wall. 181. I am not insensible to the strength of the argument that, after providing for full examination of the pretensions of an inventor, and allowing amendments liberally, and appeals from erroneous decisions, it is not unjust to make some actions of the commissioner final. Undoubtedly not; but until both are concluded there is no reason why either should be. In U. S. v. Butterworth, 3 Mackey, 233, it was held that the commissioner could, after making and communicating to an applicant a decision in his favor, and at any time before the issuance of a patent for the signature of the secretary, reconsider the decision, and make a contrary one. And, in U. S. v. Colgate, 32 Fed. 624, it was decided that, even after the commissioner's judgment refusing a patent had been affirmed on appeal, the commissioner, upon a new application and new facts, bearing either upon novelty or abandonment, could grant a patent. How far passing a patent to issue was intended to be a final determination of an applicant's rights may be gathered from legislation preceding section 4897, supra, and from which it was an evolution, and from other sections providing for reissue. In 1863, by an amendment to previous laws, it was enacted (section 3) that every patent shall be dated as of a day not later than six months after the time at which it was passed and allowed, and notice thereof sent to the applicant or his agent; and, if the final fee for such patent be not paid within the said six months, the patent shall be withheld, and the invention therein described shall become public property, as against the applicant. This made an absolute forfeiture. An act was passed in June, 1864, extending the time until six months after its passage. March 3, 1865, was the first en-

actment allowing renewal applications. It is important, and I quote it in full. It is as follows:

"Be it enacted by the senate and house of representatives of the United States of America in congress assembled, that any persons having an interest in an invention, whether as inventor or assignee, for which a patent was ordered to issue upon the payment of the final fee, as provided in section 3 of an act approved March 3, 1863, but who has failed to make payment of the final fee as provided in said act, shall have the right to make an application for a patent for his invention, the same as in the case of an original application, provided such application be made within two years after the date of the allowance of the original application: provided, that nothing herein shall be so construed as to hold responsible in damages any persons who have manufactured or used any article or thing for which a patent aforesaid was ordered to issue. This act shall apply to all cases now in the patent office, and also to such as shall hereafter be filed. And all acts or parts of acts inconsistent with this act are hereby repealed."

This act did not limit the right "to receive the patent withheld on account of the nonpayment of the fee," as the act of 1864, by careful expression, did, but gave the right "to make an application for a patent for his invention,"—an important difference, and a larger right. Then came the act of 1870, section 35 of which provides for renewal applications. It is not in all particulars the same as the act of 1865, but does not return to the language of the act of 1864. It provides:

"That any person who has an interest in an invention or discovery, whether as inventor, etc., for which a patent was ordered to issue, * * * shall have a right to make an application for a patent for such invention or discovery the same as in the case of an original application."

The difference from the act of 1865 is in the use of the words "such invention" instead of "his invention." The act of 1865 provided for an exemption from damages as follows:

"Provided, that nothing herein shall be so construed as to hold responsible in damages any persons who have manufactured or used any article or thing for which a patent aforesaid was ordered to issue."

This was clear; but the act of 1870 added the words, "prior to the issue thereof," which introduced awkwardness and ambiguity. It could be said that the words, "prior to the issue thereof," had no use, unless the patent ordered to be issued was the one, and the only one, secured by the reapplication; and, on the other hand, it could be said, if that was the patent to be issued, why not say so in the clear and direct words of the act of 1863? It would seem a natural, if not necessary, inference, if congress intended to return to the purpose of the act of 1863, it would have expressed itself as in that act. The ambiguity is resolved somewhat, but not entirely, by Rev. St. § 4897. Its proviso is as follows:

"But no person shall be held responsible for damages for the manufacture or use of any article or thing for which a patent was ordered to issue under such renewed application prior to the issue of the patent."

This language implies reasonably, if not necessarily, a difference in the patents,—that is, the article or thing under one might not be the same as under the other. It may be conceded that all these inferences are disputable, as inferences from ambiguous language al-

ways are; but they receive support from other parts of the statute. The ambiguity consists in the word "invention." Does it refer to the idea of the inventor, or the limitations of that idea by the patent office? The bounds of the latter are in the claims; but that the claims of a patent are not coextensive with the "invention," as the word is used in the statute, is evident, from the construction of the provisions regulating reissues. These provisions, in certain specified cases (see Rev. St. § 4916), enable the commissioner to receive the surrender of a patent, and (to quote the section) "cause a new patent for the same invention and in accordance with the corrected specifications to be issued to the patentee." This language has been construed to allow new claims and enlarged claims. Walk. Pat. § 220, and case cited. See, also, Topliff v. Topliff, 145 U. S. 171, 12 Sup. Ct. 825, where the subject is elaborately considered. The court said:

"To hold that a patent can never be reissued for an enlarged claim would be not only to override the obvious intent of the statute, but would operate in many cases with great hardship upon the patentee."

To sustain their contention, counsel for defendant cite the opinion of Commissioner Butterworth in Thompson v. Waterhouse, 30 O. G. 177; and some of its language seems to do so. The learned commissioner said:

"Why is an assignment allowed to apply? Clearly, because all the questions of patentability, etc., under section 4894, have already been determined; and hence he may apply, the same as in an original application,—i. e. he may become an applicant, making the oath himself, and for the palpable reason stated above, to wit, the only invention for which the assignee may prosecute an application is such as is covered by the first or original application, and has been adjudged to be patentable, and a patent allowed, but not issued, by reason of the nonpayment of the final fee, the only question remaining being one of abandonment, which is one of fact."

But this language must be construed in reference to that which was before the commissioner. Abstract it from that, and it is as ambiguous as the section it is cited to explain. Confined to that, and considered in connection with other parts of the opinion, it is clear enough. The device in the original application and the device in the patent which issued were identical, and the commissioner was not called upon to consider a case in which they were not; but, even in the case which was before him, he asserted the necessity of resorting to the original application for the identity of the invention. He said:

"On the filing of the second application, under the provisions of section 4897, the commissioner is not permitted to regard the forfeited application as having no existence. On the contrary, the section mentioned expressly provides that any person may file a new application for the *same* invention, but *such second* application must be made within two years after the allowance of the *original application. Original of what?* Why, of the second application. So it is seen the statute clearly requires that reference must be had to the original to ascertain several facts, such as dates, identity of invention, etc." (The italics are the commissioner's.)

However, if counsel is right about this opinion, its authority is opposed by the practice of the office and the subsequent ruling of Commissioner Simonds in Ex parte Barrett, 56 O. G. 1564, in which the applicant was allowed in his renewal application to insert new

claims reversing the decision of the examiner.   Upon the whole, therefore, I think the patents sued on are valid.

This brings us to the grounds relied on by plaintiff for the preliminary injunction.   There are, as I have already said, the judgment in Bowers v. Von Schmidt, and certain testimony given in that case, explaining the claims and the affidavit of plaintiff.   In reply, defendant relies on the affidavit of its president, contradicting that of Bowers; opposes to the testimony offered by plaintiff other testimony; and urges that the judgment in Bowers v. Von Schmidt is not determinative of anything, as it has been appealed from; and, besides, defendant introduces patents which it is claimed anticipate plaintiff's, and which were not introduced in that case.   It is not necessary to consider at length the contention of the parties on the propositions.   With the conclusions in the case of Bowers v. Von Schmidt, on the evidence which was then before me, I am entirely satisfied; but other evidence and other patents have been introduced in the case at bar.   The effect of these was submitted to a jury in an action at law between the parties, and the jury failed to agree.   The consequences of this, whether it makes the case for plaintiff doubtful or otherwise, it is not necessary to determine, under the circumstances of this case.   I do not care to pass on the matter (which is to pass on the patents) on a motion for a preliminary injunction, in view of the affidavit of the president of the defendant company and its pecuniary condition, it appearing to be solvent.   There is no reason why the hearing of the case should not be pushed, and the rights of parties speedily determined.   Motion for an injunction is therefore denied.