## In re KAISLING.
### Patent Appeal No. 2518.

Court of Customs and Patent Appeals.
Dec. 1, 1930.

G. A. Yanochowski, of Chicago, Ill. (C. P. Soper, of Chicago, Ill., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This case is a rather complicated one by reason of the multiplicity of actions relating to it which were had in the Patent Office, but it presents only a question, or questions, of law, and we are not immediately concerned with the patentability of the claims from a mechanical standpoint.

It does not seem to be essential to the understanding and decision of the case fully to detail the various steps that have been taken.

The applications have been prosecuted by Kaisling's (appellant's) assignee. From the brief it appears that disagreements between the parties led to some of the procedure which brought about the complications.

The parent application was filed December 15, 1913. This application, as filed, carried three features of claimed invention, to wit, (a) a lock switch structure, (b) a lock per se, and (c) a system in which the lock switch was a useful element for dimming certain of the lights. The complete structure was apparently primarily for use on automobiles.

In 1915 the examiner required a division of the application (which had been amended by inserting claims that finally became claims 1 and 2 of the instant controversy) so as to divide the claims covering the lighting switch arrangement (including a dimming feature) from the other claims.

In 1917 claims were filed for the purpose of interferences with a co-pending application of another party.

The required divisional applications were held in abeyance while the interference proceedings were pending, but on November 10, 1919, a divisional application was filed including some subject-matter not involved in the interferences. This application eventually became the basis upon which the issue before us was formulated.

Final decision was not had in the interference proceedings until January 4, 1924. It was favorable to applicant herein, and, following it, the ex parte prosecution of the claims was proceeded with. It was appellant's insistence that one of his claims (No. 3 in the case now before us) stood allowed as a result of the decision in the interference case, but the examiner required the division, as theretofore had been suggested, and the inclusion of that claim in the divisional application.

The parent application was several times amended, and, as amended, was finally allowed on December 15, 1924. The patent as No. 1,523,426, seems to have been formally taken out on January 20, 1925, and it included only claims for the switch. In the meantime, the divisional application of November 10, 1919, had been so amended and proceeded with as that, on July 18, 1924, patent was ordered covering only the claims to the lock per se.

This latter patent did not issue, however, because the final fee was not paid within the time fixed by the statute.

On January 21, 1925 (the day following the actual taking out of the patent granted on the parent application), the assignee of Kaisling filed an application for the renewal of the patent allowed, but not taken out, under the divisional application.

In taking this action appellant proposed to proceed under section 4897, Rev. St., which, at that time (1925), provided that within two [1] years from the allowance of a patent application, where there had been a failure to take the allowed patent out because of nonpayment of the final fee within six months from date of allowance, a person in interest might file application for renewal.

In this renewal application, however, appellant did not simply seek a renewal of the ordered, but unissued, patent on the lock per se. On the contrary, it was proposed, by an amendment submitted with the renewal application, virtually to cancel the lock claims as they had been allowed and substitute therefor the claims that are here at issue as Nos. 1, 2, and 3; these being duplicates of claims that had, on November 22, 1924, been canceled from the parent case (as claims therein Nos. 24, 25, and 34, the latter being the claim won by applicant in the interference proceeding). In other words, as stated by the examiner:

"* * * The petition for renewal * * * was presented accompanied by an amendment directing the change of the statement of invention so as to cover the system, and directing the substitution for the *lock* claims, of claims for the *system*." (Italics ours.)

So, in the final analysis, the primary question presented is whether applicant proceeding under section 4897, Rev. St., by a petition, purporting to be an application for renewal, may change the character of the proceedings so that he will virtually eliminate the patent as allowed, or secure it in connection with subject matter not claimed, or attempted to be claimed, in the application as allowed. In other words, is appellant's application such a renewal application as is contemplated and provided for in the statute?

Both the examiner and the Board of Appeals held against appellant, and the question is before us on appeal from the decision of the latter.

At the time of filing the renewal petition (which included 13 claims), appellant accompanied it by a statement from which we quote:

"The claims allowed in this application have been slightly amended and transferred to the parent application. They have been so changed as to make them switch structure claims. As to the claims submitted by this amendment, the first three of these claims are claims that have been transferred to this application from the parent application to maintain a line of division. The third claim is a claim from Interference No. 41,977, in which interference priority was awarded to applicant. As to the other claims submitted by this amendment these are believed to be all allowable to applicant in view of the award of priority in said Interference No. 41,977."

The examiner held, in substance, that the petition could not be treated as a renewal application for the reason that it was not for the same invention, and the reasoning of the board was in line with that of the examiner.

It may be stated that there was agreement by the examiner and the board as to certain other phases of the controversy, but we regard the question of appellant's rights under his renewal petition as being of first importance, and hence do not complicate the matter by bringing these additional issues forward here.

The material portion of section 4897 reads:

"Sec. 4897. Any person who has an interest in an invention or discovery, whether as inventor, discoverer, or assignee, for which a patent was ordered to issue upon the payment of the final fee, but who fails to make payment thereof within six months from the time at which it was passed and allowed, and notice thereof was sent to the applicant or his agent, shall have a right to make an application for a patent for such invention or discovery the same as in the case of an original application."

Appellant insists that under the wording an applicant is not confined, in a renewal application, to the claimed invention allowed in the forfeited patent, but that, on the contrary, he may "claim any invention or discovery the same as in the case of an original application," and in the course of his brief refers the court to Ex parte Barrett, 1891 C. D. 154; Karl Kiefer Mech. Co. v. Unionwerke (D. C.) 218 F. 847; Ex parte Prouty, 1919 C. D. 62; and Bowers v. San Francisco Bridge Co. (C. C.) 69 F. 640, 641. These several cases we have examined.

---

[1] The statute was amended in 1927 (35 USCA § 38) so as to limit the time for making renewal application to one year.

In the Barrett Case, supra, the Commissioner of Patents held that Barrett had the right to file a renewal application and to "present for examination certain new claims." The text of his opinion induces the belief that the question with which the commissioner was there concerned was primarily the question of the oath to the petition involved. Rule 176 is quoted and certain comment made as to the oath, petition, etc., and then follows the sentence:

"In all this I find no suggestion that an applicant may not treat his renewal application as he may an original application, and if he may, it is of course his right to present and have considered such claims as he thinks proper."

In the absence of specific information as to what the "certain new claims" proposed in the case were, we hardly think the general observation quoted may be accepted as governing in the instant case.

It seems well to quote the opening statement of the Commissioner of Patents in the Prouty Case, supra:

"This is a petition that applicant be allowed to prosecute, in a renewal application, claims to a *specific form* of the invention other than the *species* covered by the claims originally allowed in the application that became forfeited." (Italics ours.)

The commissioner then held that:

"An applicant may ordinarily make a new election in a renewal application and prosecute claims to a species other than that originally elected, *provided, of course, that such species is fully disclosed in the original application.*" (Italics ours.)

The material portion of rule 175 reads:

"When the patent has been withheld by reason of nonpayment of the final fee, any person * * * may file a renewal of the application for the *same* invention. * * *" (Italics ours.)

It will be borne in mind that the quoted portion of the rule is based upon that part of section 4897, Rev. St., which reads:

"Any person * * * shall have a right to make an application for a patent for *such* invention or discovery the same as in the case of an original application." (Italics ours.)

The "such invention" means the invention "for which a patent was ordered to issue," referred to earlier in the section. See statute, supra.

It is fundamental, of course, that a rule of the Patent Office can add nothing to the rights provided in the statute. The rules are made for carrying out the law and may not be inconsistent therewith.

We think, therefore, that in the Prouty Case, supra, there was no purpose on the part of the commissioner to construe the statute and the rule so as to permit renewal applications which would include *subjects of invention* different from those embraced in the application which had been forfeited. He did hold that claims to a *species* other than that originally elected might be prosecuted, but made the requirement that such species must have been fully disclosed in the "original application"; and by "original application" he must have meant the application in the form in which it stood at the time of its allowance, which may or may not have been the form in which it stood as first filed.

In the Bowers Case, supra, decided in 1895 by the United States Circuit Court of the Northern District of California, there are expressions which, standing alone, might indicate a broader interpretation than we have ascribed to the decision in the Prouty Case, supra; but an examination as to the issues (in any way relevant to the question here), which were actually decided therein, discloses that there is nothing to indicate that the claims attacked and upheld (being claims presented in a renewal application, and allowed after a division of same required by the examiner) were not fully disclosed in the form of the forfeited application.

We find nothing in the Kiefer Case, supra, which seems to aid in the instant controversy. A reissue patent was there in question. It was found not to have been broadened in that reissue over the first application.

In the Bowers Case, supra, it was said by the court that the language of section 4897, Rev. St., "is ambiguous enough to exercise and puzzle interpretation." This is followed by an interesting and learned discussion in which analogies are drawn between the renewal and the reissue sections of the statute.

After a full consideration of all the authorities available to us, we conclude that a fair and reasonable construction, in so far as one is necessary in the instant controversy, is found in the statement that if an applicant, in making application for a renewal, elects to alter the claims as they stood in the forfeited application and put them in a form of invention or discovery different from the form in which forfeited, he may do so, pro-

vided the newly proposed form was claimed, or attempted to be claimed, in the application as worded at the time of its allowance, such alteration not of course to result in a patent for any subject matter not included in the forfeited application.

This we understand to be the Patent Office practice. It gives to the applicant the benefit of the "such invention or discovery" for which "a patent was ordered to issue," and seems fully to meet the statute and the Patent Office rule.

Under this rule, obviously, appellant in the instant case must fail.

He seeks to claim matter in a renewal application which was not claimed in the application as allowed. It is not merely a change of form but of substance.

The patent was offered upon a divisional application, carved out of the parent application. This divisional application, for the purposes of this case, must be treated as though it were an entirely original application, and the renewal application must be tested by this divisional one in the form in which the latter stood when allowed.

Under this view it is unnecessary to determine the other issues raised.

The decision of the Board of Appeals is affirmed.

Affirmed.