HEYWOOD BROS. & WAKEFIELD CO. v. SYRACUSE RAPID TRANSIT RY. CO.

(Circuit Court, N. D. New York. March 27, 1907.)

1. PATENTS—VALIDITY AND INFRINGEMENT—CAR SEATS.

The Aze and Gilfillan (Wheeler, assignee) patent, No. 491,761, for a car seat having a reversible back of the "walk over" type, the essential feature of which is a pair of arms connecting the back to the seat frame, having the one end of the pair pivoted to the end of the frame near the center thereof by pivots arranged in a horizontal plane, and having the other or upper end of the pair pivoted to the end of the back by pivots arranged in a plane substantially at right angles to the plane of the back, in such method of pivoting discloses novelty and patentable invention, and is entitled to a broad range of equivalents. Also *held* valid as against the claim that the invention was made by another than the patentees and infringed by a seat having at one end a pair of arms exactly like those of

the patent, and at the other end a pair which were functionally equivalent.

**2. SAME—EVIDENCE OF INVENTION—COMMERCIAL SUCCESS OF DEVICE.**

In all cases the great commercial success of a patented device, and the fact that it supplants or supersedes other devices of the same kind used for the same purpose, are evidence of patentable invention, novelty, and utility of no mean order or low degree, and such facts are in many cases persuasive evidence of a most valuable conception.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 39.

Utility, extent of use, and commercial success as evidence of invention, see note to Doig v. Morgan Mach. Co., 59 C. C. A. 620.]

**3. SAME—CONSTRUCTION OF CLAIMS—EFFECT OF PROCEEDINGS IN PATENT OFFICE.**

While it is settled law that a patentee who has acquiesced in the rejection of a broad claim by substituting a narrower one cannot insist upon a construction of the latter to cover that which was rejected, yet such rule does not debar him from a liberal construction of the claim as granted, nor from the benefit of the doctrine of equivalents.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 244.]

**4. SAME—AMENDMENT OF CLAIMS.**

If there was no amendment narrowing a claim of a patent in respect to the essential feature of the invention disclosed therein, amendments made in reference to an incidental matter intended to perfect the claim or device impose no restriction on the rights of the patentee in respect to equivalents.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 244.]

**5. SAME—INFRINGEMENT—CAR SEATS.**

The patentable invention disclosed by the Curwen patent, No. 784,383, for a car seat, relates to one thing, while that of the Aze and Gilfillan patent, No. 491,761, relates to an entirely different thing, which is not claimed nor covered by the Curwen patent, and the fact that a structure conforms to that of the latter patent and contains the patentable feature thereof is not even presumptive proof that it does not also embody the invention of the Aze and Gilfillan patent and infringe the same.

In Equity. Suit for alleged infringement of claims 2, 3, 4, 5, 10, and 11 of United States letters patent for car seat to Aze and Gilfillan, No. 491,761, dated February 14, 1893, on application filed November 24, 1891. The defendant is a user of the alleged infringing seat.

Samuel Owen Edmonds (J. Edgar Bull, of counsel), for complainant.

Gannon, Spencer & Michell (Melville Church and Francis Rawle, of counsel), for defendant.

RAY, District Judge. The patent in suit relates to "car seats," although the same may be used in any place where such a seat is desired, and was issued February 14, 1893, on application filed November 24, 1891, to Emile Aze and Essington N. Gilfillan, assignors to Harris A. Wheeler. The seat constructed under this patent has come to be known, generally, as the "Wheeler Seat," and will be so referred to, and the patent will be referred to as the "Wheeler Patent." This seat belongs to the type known as "walk over," as distinguished from the "turn over." In both types the back of the seat is carried from the one side thereof to the other, being pivoted to the frame near the center of the seat at both ends in some manner, but in the

latter type the back turns completely over, making a half revolution, so that what was the upper edge when on one side of the seat becomes the lower edge when on the other, and consequently the same side of the seat back is always presented to the back of the occupant and receives the wear. The "walk over" back does not revolve at all, but is carried over, being pivoted to the frame, or frame and arm of the seat in some manner, always retaining its upright position, and consequently the same side of the seat back is not always presented to the occupant and both sides have equal wear, and the upper edge when in one position is the upper edge when in the other. There are other alleged advantages in the "walk over" type, such as ease and rapidity and certainty of movement, etc., when a change of position is desired; but it is unnecessary to go into detail, as the utility of the patented device, and, to an extent, the superiority of this "walk over" type, is conceded. The proof shows that, in many cases at least, this type of seat has superseded, and is superseding, the "turn over," and has met, and is meeting, with large sales. Complainant's seat is a commercial success; has had, and now has, large sales. In short, it is conceded that the patent in suit discloses some patentable novelty, but defendant contends that it is not for a pioneer invention and is to be quite narrowly construed and limited, and that so construed and limited as it must be, in view of the prior art and the proceedings in the Patent Office, disclosed by the file wrapper, the defendant does not infringe. The defendant also insists that the patentee's assignors were not the first inventors, but that one Emery B. Cushing was, and therefore the patent is void. It insists that, as early as 1888, Cushing made the complete invention of the entire subject-matter of the claims in suit, completed a working model which was operative, and disclosed his invention to some of his friends and neighbors. This alleged model is in evidence, and shows substantially all that is disclosed by the patent in suit. But it is not identified by any person except Cushing, and I do not think the proof shows it was in existence at any date prior to the application for and the granting of the patent in suit. Cushing applied for a patent on the device embodied in his model some two years after the patent in suit had been issued and the structures in accordance therewith had been put in practical and public use. A somewhat lame excuse for this delay has been given, but I am not satisfied with it. Undoubtedly he was at work on a car seat; but, if he had completed the model in suit, it is incredible that he did not apply for a patent. He was not a novice nor ignorant of the patent laws. In short, I find that Cushing was not the inventor, but that Aze and Gilfillan were.

The claims of the patent in suit which are in issue read as follows:

"(2) In a reversible car seat, the combination with a frame and a back, of a pair of arms substantially equal in length, pivoted to each end of the back at their upper ends, and having their lower ends pivoted to the frame near the center thereof, the pivots connecting said arms to the back being arranged in a line extending at an angle to the plane of the back, substantially as set forth.

"(3) In a reversible car seat, the combination with a frame, and the back, of a pair of substantially parallel arms pivoted to said frame and to each side

of said back, and such latter pivots being in a line at right angles to the plane of the back, substantially as set forth.

"(4) In a reversible car seat, the combination with the frame and the back, of a pair of substantially parallel arms pivoted at their ends respectively to each side of the back and the frame, the pivots thereof at the upper end of the pair being arranged in a plane at right angles to the back and at the other end in a horizontal plane, substantially as set forth.

"(5) In a reversible car seat, the combination with a frame and a back, of a pair of substantially parallel supporting arms, pivoted to the lower edge of said back, and to the frame, at each side, and a stop for limiting the movement of said arms, the pivots connecting the arms to the back being arranged in a line extending at an angle to the plane of the back, and the pivots connecting the arms to the frame, being located near the center of the frame, substantially as set forth."

"(10) In a reversible car seat, the combination with the frame of the back having heads rigidly fixed to both sides thereof, and arms pivoted to the said heads, and to both sides of the frame near the center thereof, the pivots connecting said arms to the said heads being normally arranged in a line extending at an angle to the plane of the back, substantially as set forth.

"(11) In a reversible car seat, the combination with the frame of the back having heads rigidly fixed thereto and projecting below the lower edge thereof, and arms pivoted to said heads, and to both sides of said frame near the center thereof, the pivots connecting said arms to the heads being arranged in a line extending at an angle to the plane of the back, substantially as set forth."

Claim 2 has in combination in a "reversible car seat" (1) a frame and a back; (2) "a pair of arms" substantially equal in length (a) pivoted to "each end" of the back at their (the arms) upper ends, and (b) having their (the arms) lower ends pivoted to the frame near the center thereof; and (3) the pivots connecting said arms to the back being arranged in a line extending at an angle (any angle?) to the plane of the back, substantially as set forth.

Claim 3 has in a "reversible car seat" the combination of (1) a frame; (2) a back; (3) a pair of substantially parallel arms (a) pivoted to said frame and (b) to each side (end) of said back; and (4) the pivots attaching the arms to the back being in a line at "right angles to the plane of the back." Claim 3 differs from claim 2, in that the arms are "substantially parallel," but not necessarily of substantially the same length, and the pivots connecting the arms with the back are in a line at "right angles" to the plane of the back, instead of extending at an angle to the plane of the back.

Claim 4 has, in a "reversible car seat," the combination (1) with the frame and the back; (2) a pair of substantially parallel arms (a) pivoted at their ends respectively to each side (end) of the back and the frame, the pivots thereof (b) at the upper end of the pair being arranged in a plane at right angles to the back, and (c) at the other end in a horizontal plane. This claim mentions the manner in which the lower end of "the pair is pivoted to the frame."

Claim 5 calls the arms "supporting arms," which they are in fact in all the claims, pivots the upper end to the "lower edge of said back," intending evidently the lower position of the edge of the end, not the edge of the lower side, although this might be done, adds a "stop" for limiting the movement of the arms, but the pivots connecting the arms to the back are not necessarily arranged in a line extending at a "right angle" to the plane of the back.

Without describing the other claims more in detail, the main idea present in each claim is a "pair of arms" pivoted at each end of the pair; the one end being pivoted to one end of the back of the seat, and the other end to the corresponding end of the frame of the seat. It is conceded by both parties that claims 3, 4, 5, 10, and 11 are to be read with "end" substituted for "side," where the pivoting of the pair of arms to the back is spoken of, and that each claim in suit calls for two "pair of arms," one pair at each end of the seat. Read as they do read, literally, this is not true, for in claims 3 and 4, for instance, only one pair of arms is mentioned, and this pair of arms (two arms make a pair of arms) is pivoted at one end thereof (not at each end of each arm) to each side of the back. This is possible and practicable, for the one arm of the pair could be pivoted to the front side of the back, and the other arm of the pair to the back side of the back. Claim 2 expressly states that a pair of arms is to be pivoted to each end of the back. Hence that claim calls for two pairs of arms. But a reference to the proceedings in the Patent Office demonstrates beyond all question that the claims were only allowed when changes were made which included two pairs of arms, one pair at each end of the seat, and complainant's expert testified "the words 'end' and 'side,' while referring to the pivotal connection of the arms to the back and the seat frame, mean one and the same thing."

Claim 2 now in suit was an additional claim (5) presented June 17, 1892, and read as follows:

"In a reversible car seat, the combination with a frame and a back, of a pair of arms substantially equal in length, pivoted to each end of the back and to the frame, the pivots connecting said arms to the back being arranged in a line extending at an angle to the plane of the back, substantially as set forth."

This took the place of original claim 5, which became claim 7. This additional claim was objected to July 19, 1892, as follows:

"Claims 5, 7, 9, and 10 are each rejected as expressed on the patent to Stanley, reversible seat, No. 186,505, January 23, 1877 (Car Seats). These claims should each set forth the arms at each side of the back."

This meant each end of the back; that is, the aisle end and the end next the side of the car. September 17, 1892, the applicants amended this claim, then 5, now 2, as follows:

"Claim 5, line 3, cancel 'and to the frame' and insert 'at the upper ends, and having their lower ends pivoted to the frame near the center thereof.'"

This was done, and the additional claim 5, substituted for original claim 5, which had become claim 7 by amendments, etc., of June 17th, became claim 2 of the patent in suit.

The history of claim 3 of the patent in suit is as follows: Original claim 4 read:

"In a reversible car seat, the combination with the back, of a pair of substantially parallel arms pivoted to said back and such pivots being in a line at right angles to the frame of the back."

January 23, 1892, this was objected to as follows:

"Claims 3, 4, 7, and 8 are objectionable in form for the reasons urged against claim 1, and are rejected on the reference cited therefor."

The objections and reference as to original claim 1 were:

"Claim 1 is indefinite and incomplete. The supporting frame and the pivoted connection of the arms thereto should be included. It is rejected on patent to Norcross, No. 436,313, September 9, 1890."

June 17, 1892, the applicants said by way of amendments:

"Claim 4, line 1, after 'with' insert 'a frame.' Line 2, after 'said' insert 'frame and to.' Line 4, change 'frame' to 'plane.' Same line, after 'back' insert 'substantially as set forth.' Also change numerals of claims 2, 3, 4, * * * to 3, 4, 6, * * * respectively, and insert the following additional claims."

Claim 4 then became claim 6; a new claim, later claim 2, coming in as claim 5. In reference to the claims as thus presented, the applicants said:

"Claims 5, 6, 7, and 8: The reference does not show pivots at the upper ends of the arms arranged in a line at right angles to the back, nor are the arms substantially equal in length. By such a construction, the applicants gain all of the advantages of the references, and none of the disadvantages, and with applicants' construction, the arms need not project above the bottom cushion, and yet they produce the maximum length of throw."

July 19, 1892, the Patent Office said, "Claim 6 when amended to include a pair of arms at each side of the back may be allowed." The words "each side (end) of said," before "back," in line 4 of claim 3 in the patent, and the word "and," after "frame," line 1, were then inserted, and by cancellation of claims and change of numerals claim 6, original claim 4, became claim 3 of the patent in suit.

It is evident, therefore, that while this claim was originally rejected on Norcross, No. 436,313, this was not persisted in in face of the protest and statement of June 17th, already quoted, calling attention to the arrangement of the arms in a line at right angles to the back and their pivoting to the back in that form and to their equal length. The Patent Office acquiesced in the equity of that contention, and required the addition merely of another pair of arms at the other end of the seat.

Norcross, No. 436,313, September 9, 1890, shows a pair of arms (levers) at the end of the seat; each arm having a short right angle arm at the lower end, which short arms are crossed upon each other, said levers (arms) lying edge to edge in the same vertical plane when the back is in position, and are pivoted to the seat frame at their lower ends on the same horizontal line, and to the back at their upper ends "as set forth." As set forth, "Plates, G, are attached to the ends of the back and the levers (arms), FF', are pivoted to it in such a position as to be relatively reversed as to points of attachment with reference to their lower ends," and so as to bring the one or the other of them under a spring bolt shown when the back is in position for occupancy. While these levers or arms are pivoted to the seat frame "on the same horizontal line," they may or may not be pivoted to the end of the back of the seat by pivots arranged in a line extending at an angle to the plane of the back, or by pivots "being in a line at right angles to the plane of the back." Norcross is not only silent on the subject, but shows a pivoting of the arms to the back of the seat that is entirely and radically different from the conception of the patent in suit. On this point, the patent in suit says:

"In any event, however, the pivots at the upper ends of each pair of arms should fall in a line substantially at right angles to the plane of the back."

The result is that the very essence or gist of each of the claims in suit is, not merely two pairs of arms, or one pair of arms, the arms thereof being of substantially equal length, pivoted, the one end of the pair to the frame by pivots arranged in a horizontal plane, and the other or upper end of the pair pivoted to the end of the back by pivots arranged in any convenient manner with reference to the plane of the back, but a pair of arms having the one end of the pair pivoted to the end of the frame near the center thereof by pivots arranged in a horizontal plane, and having the other or upper end of the pair of arms pivoted to the end of the back of the seat by pivots, not a pivot, "arranged in a plane at right angles to the back," or at least "in a line extending at an angle to the plane of the back substantially as set forth," which means "in a line substantially at right angles to the plane of the back," as we have seen by reference to the specifications. In short, the very gist of each claim is the place, mode, and manner (angle) in which the pair of arms, one pair at least, is pivoted by pivots to the frame, and especially to the end of the back of the seat. And here is the conception, the patentable invention, or novelty of Aze and Gilfillan as disclosed in the Wheeler seat. Take this from either claim in suit, and it falls, for we would have an old combination of old elements; old elements combined in substantially the old way, to produce the old result. Retain this conception, and pivot the upper-end of the pair of arms to the end of the back of the seat by pivots arranged in a plane at right angles to the back, or substantially at a right angle thereto, and we have old elements; but they are combined in a new way, and they operate in a new way, to produce an old result, but they produce it much more quickly, easily, certainly, in a much better way. This is patentable invention.

In the Stillwell and Brundage seat of the prior art and in the Gordon and Degener movement applied to a car seat, we have two arms at each end of the seat, a pair of arms, the lower ends of the arms being pivoted to the frame, the one arm to the arm of the seat, and the other to the end of the frame proper; the pivots being in a perpendicular line. The other or upper ends of these arms are pivoted to the end of the back of the seat, but in a line in the plane of the back, not at an angle therewith, and the result is that when the back of the seat is carried across, unless constantly supported by the hand of the operator, it will fall down when half way over, as all the pivots of all the arms are then in a line with the plane of the back. This defect in the prior art was obviated by the Aze and Gilfillan patent.

In close cases, the commercial success of an alleged invention sometimes turns the scale in determining whether or not patentable invention is disclosed. In all cases the great commercial success of the patented device, and the fact that it supplants or supersedes other devices of the same kind used for the same purpose, are evidence of patentable invention, novelty, and utility of no mean order or low degree. These facts are in many cases persuasive evidence of a most valuable conception.

In this case, I have examined the file wrapper and the prior art to ascertain if there is any suggestion in the prior art of this mode of pivoting the arms to the back of the seat. I am unable to find it in this or any analogous art. I have also examined the file wrapper critically to ascertain if the patentees in any way limited their real invention or its application. It seems to me they should be entitled to the broadest range of equivalents. As the claims were first filed, the one end of the back of the seat was left without support, swinging in the air, or means for causing the back to move as a whole, both ends of the back in unison and with adequate support after being moved from the one side to the other. Hence arms or some equivalent at each end of the back should have been included, and were required by the Patent Office, and, later, included. This amendment calls for a pair of arms at each end of the seat. But does this, in such an invention as this, permit without infringing the substitution of an equivalent at one end—an equivalent which performs all the functions demanded of that pair of arms, and which is also the equivalent in name? That is the question in this case. The criticism can be made that defendant's substitute is not "a pair of arms." But this is hypercritical. Primarily "pair" means "two things of a kind, similar in form, identical in purpose and matched or used together." But secondarily, the word means "a single thing composed essentially of two pieces or parts which are used only in combination, and named only in the plural." A pair of shears or scissors has two blades, but one may be shorter than the other, and they are of different shape, etc. The Patent Office itself subsequently set that question at rest, as we shall see.

The defendant uses a seat which is a "Chinese copy" of complainant's in every material respect, except one. In that respect, he has substituted an equivalent pair of arms which performs every function of the pair of arms pivoted as described in the patent for which it is a substitute. This substituted pair of arms is pivoted somewhat differently, but, in substance, operates in precisely the same way. Its object, purpose, and result is the same. This fact was subsequently declared by the Patent Office. Defendant has a pair of arms at each end of the seat back, but in the equivalent pair, placed at the end next the side of the car, it has a pair of arms, one of which arms is much shorter than the other, and the lower end of this short arm is not pivoted to the end of the frame. The upper end of this pair is pivoted to the end of the back of the seat, but not by two pivots, only one, and these arms, instead of being side by side in a line at right angles with the plane of the back, are movable on the same pivot, and are arranged in a line with the plane of the back when upright; that is, the short one is immediately in front of the longer one as we look at the seat from the aisle of the car, or behind it as we view the seat from the opposite direction. This long arm of this pair is pivoted to the frame of the seat near the center of the end, and is connected with and acts and moves synchronously with the pair of arms at the other end, and operates or acts to hold the end of the back to which it is pivoted in position, and carry it without bend or wobble to its new position on the other side of the seat. The short arm of this

pair moves synchronously with the long arm thereof, but does not maintain or have the same inclination. The two are parallel only when the back is exactly upright on its way from the one side of the seat to the other. When the back has been changed—that is, when it is in position for use by the occupant of the seat—the lower end of this short arm, being pointed, fits into a socket on the frame of the seat, and, acting in connection with the long arm, supports and holds the end of the back to which attached firmly in position. I repeat: The objects, purposes, and functions of the substituted pair of arms are precisely those of the duplicate pair of the Wheeler seat made under the patent in suit. The two pairs of arms in both seats are made to operate or act in synchronism by substantially the same means or connections, although the Curwen patent which covers these means, and to which attention will be called later, is for an improvement in such means. In short, the invention of the Curwen patent, as we shall see, is for improved means for connecting the arms at the two ends of a car seat and causing them to work in unison, and nothing more.

It is true that, in the broad sense, Aze and Gilfillan were not pioneers in this art, or in this branch of the art relating to "walk over" backs. They were improvers, and they made a long and useful step in advance. The Brill Company, really defending this suit, and now making and using and selling with their cars, equipped therewith, the alleged infringing seat, formerly used and equipped the cars made and sold by it with the Wheeler seat. That company acquiesced in the validity of the Aze and Gilfillan patent for years, and recognized the utility and commercial value of the seats made in accordance with it; but this fact does not estop them or preclude them from using any car seat they see fit to use, provided it does not infringe. That company had the right, with all other persons, to invent, if it could, or secure an improved car seat, or to substitute an inferior one, but not to appropriate the Aze and Gilfillan invention. The fact is mainly pertinent as bearing on the novelty and value of the real conception and patentable novelty disclosed in the Wheeler seat. Aze and Gilfillan were pioneers in walk over seats, having a pair of arms with the upper ends of the pair pivoted to the end of the back of the seat by pivots arranged in a line substantially at right angles to the plane of the back, or in a walk over seat having two pairs of such arms so pivoted and also pivoted to the frame of the seat. A pair of arms at each end of the seat, and single arms at each end, were old in the art, and, as stated by the Patent Office in considering the Curwen application subsequently, "there was no invention in combining the two." In that particular feature, they were pioneers. In that feature they or the complainant are entitled to a fair range of equivalents. My attention is invited to a seat having the Stillwell and Brundage devices and the Gordon and Degener mechanical movement added and applied or pivoted to the back of the seat and the frame in the same manner Aze and Gilfillan apply it. Aze and Gilfillan did not patent a mechanical movement. The trouble with the illustration is that it comes too late, long after Aze and Gilfillan had made their invention and obtained their patent. Having pointed the way, it

now seems simple enough. But it is contended that as Aze and Gilfillan were merely improvers, and defendant's seat can be differentiated from complainant's, the charge of infringement cannot be sustained. Cimiotti Unhairing Co. v. American Fur R. Co., 198 U. S. 399, 414, 25 Sup. Ct. 697, 49 L. Ed. 1100; Kokomo Fence Machine Co. v. Kitselman, 189 U. S. 8, 23 Sup. Ct. 521, 47 L. Ed. 689.

It is settled law in patent cases that:

"When an inventor seeking a broad claim which is rejected, in which rejection he acquiesces, substitutes therefor a narrower claim, he cannot be heard to insist that the construction of the claim allowed shall cover that which has been previously rejected." Computing Scale Co. of America v. Automatic Scale Co. (Supreme Court of U. S., Feb. 25, 1907, not yet officially reported) 27 Sup. Ct. 307, 51 L. Ed. ——; Corbin Cabinet Lock Co. v. Eagle Lock Co., 150 U. S. 38–40, 14 Sup. Ct. 28, 37 L. Ed. 989; Hubbell v. United States, 179 U. S. 77–80, 21 Sup. Ct. 24, 45 L. Ed. 95, and cases there cited.

Still "the patentee is entitled to a fair construction of the terms of his claim as actually granted." Hubbell v. United States, supra. It is a matter of course, in view of the authorities cited, that in order to infringe the defendant must have and use a car seat having a pair of arms at each end thereof, or an equivalent, and these pairs of arms must be pivoted to the back in substantially the manner described, or an equivalent manner, and also to the frame of the seat. I do not understand that these cases hold that, where an inventor substitutes and accepts a narrower claim than the one first presented, that having been rejected, he is confined to that precise form allowed and bars himself from the benefits of the doctrine of equivalents, unless he has used language which does confine him to the precise form described. He may limit himself in the use of equivalents, of course. He is not entitled "to any considerable range of equivalents, but is practically limited to the means shown by the inventor" (Computing Scale Co. of America v. Automatic Scale Co., supra); but no one can take his invention bodily and escape the charge of infringement by using it in a different form merely, or in connection with some other thing which in no sense modifies or is modified or affected by it. If that can be done, then every inventor whose invention is new and resides wholly in some one element of his claim loses all right to the doctrine of equivalents, if he makes the claim for that element too broad to begin with, and is required to make it narrower to accord with his actual invention, and does make it narrower to express his real invention. And in such case, if that be true, an infringer may take it, the element containing his invention, bodily and combine it in a claim with other old and equivalent elements, all together working or operating in the same way as the inventor's combination to produce the same result sought and obtained by the true inventor. The greater should include the less, and, while Aze and Gilfillan cannot claim the seat with only one pair of arms, they may claim the seat with two pairs of arms, any two pairs of arms that embody and use their true invention. If there has been no amendment or narrowing of the claim in respect to its very essence, the "pith and marrow" of the invention disclosed in the claim, if there was no issue as to that, and the amendments were made in reference to an incidental

matter, something that would perfect the claim or device and make it more useful or operative, then there is no restriction of limitation on the rights of the patentee as respects equivalents for some part of his device when made in accordance with his patent. Reece Co. v. Globe Co., 61 Fed. 958, 10 C. C. A. 194; United States Co. v. Sturtevant Co., 125 Fed. 384, 60 C. C. A. 244; Winans v. Denmead, 15 How. (U. S.) 330, 14 L. Ed. 717. The law is to protect meritorious patentees and promote justice.

We return, therefore, to the question whether or not the defendant's seat is so differentiated from complainant's that it must be held the charge of infringement is not sustained. Defendant has not dispensed with a pair of arms at either end of the seat. It has substituted another pair at one end, and at the other end uses an exact duplicate of the complainant's pair of arms, including the pivoting to both frame and back, and has, in so doing, appropriated the invention of Aze and Gilfillan, now the property of complainant. It connects these two pairs of arms in the same way complainant does, and so that they operate synchronously. It by no new or patentable device, but by an old socket attached to the frame, dispenses with the necessity of absolutely pivoting the short arm of the substituted pair to the end of the frame of the seat, as when this short arm sets into the socket, as it necessarily must, being carried to it by the action and movement of the first pair of arms, pivoted as are complainant's, it performs all the functions, the very function, of the second arm in complainant's pair attached to and used at that end of the seat. Pivoted to the end of the back at its upper end, and seated in the socket at the other, this short arm is a complete substitute for the second arm of the pair at that end and its full equivalent. The long and short arm forming this substituted pair are each pivoted to the end of the back, but not by two pivots arranged in a line at right angles with the plane of the back, but by one pivot in a line at right angles with the plane of the back, and, of course, in a line drawn at any angle with the plane of the back. The substituted pair of arms performs every function required or demanded by the Patent Office of the second pair of arms when it insisted on a pair of arms at each end of the seat. The Patent Office so held and declared subsequently in the following language:

"In claim 1 it is evident that if one link (arm) of Aze is left off the back will operate the same as if it is on, although it might not operate so smoothly."

The occasion of this will be stated later. The Patent Office did not demand that the second pair of arms should be pivoted in any particular manner. The demand was:

"Arms at each side (end) of the back should also be included. * * * Claim 6 [of which I have given the history, and which became claim 3 in the patent as finally granted], when amended to include a pair of arms at each side (end) of the back, may be allowed."

As to claims 5, 7, 9, and 10, "these claims should each set forth the arms at each side of the back." So of the other claims. No importance whatever was attached to the mode or manner of pivoting the second pair of arms to the back or frame, and nothing was said

on that subject. Certainly they must move in unison with the others, and be attached to the seat; but their function was to support the back, steady it, and hold it when in position, merely, not to carry it over and prevent it from falling down, etc., and give the proper inclination to the back of the seat, as all that is effectively done by the first pair of arms properly pivoted in accordance with the patent, and which pair of arms is used by the defendant. There is no patentable difference in the modes of using or in the use or in the application between complainant's pair of arms and defendant's substituted pair of arms. Busell Trimmer Co. v. Stevens, 137 U. S. 423, 11 Sup. Ct. 150, 34 L. Ed. 719.

There is another and a familiar rule of law, perfectly just and applicable here, which is: "That which would anticipate, if earlier, will infringe, if later." Clearly, if the defendant had patented the alleged infringing car seat, and the complainant had then made and used the Wheeler seat, he would infringe. He could not escape by saying: "For the same purpose, and to attain the same result, I use two pairs of your arms each pivoted according to the very essence of your patent, each containing the very gist of your invention, instead of one pair, and therefore I do not infringe your patent."

The defendant claims that its seat is constructed in accordance with the patent to Samuel M. Curwen, issued March 7, 1905, No. 784,383, for car seat, and that, as the structure there shown was held to show patentable novelty, it is proof that the Patent Office found a patentable difference in the two structures, and therefore they are sufficiently differentiated. The fallacy of this is easily seen and demonstrated. The claims of the Curwen patent, 11 in number, do not, nor does either one of them, mention the mode or manner of pivoting the arms, or "links," as Curwen calls these arms, to either the back or the frame of the seat. That question is not involved in the claims of the Curwen patent. Had Curwen pivoted his links to the seat back by pivots arranged in a line substantially at right angles with the plane of the back, or to the back in that manner and to the frame in the manner described, and claimed that manner of pivoting, etc., his claim would have been promptly rejected as anticipated by the Aze and Gilfillan patent in suit. Claim 1 of Curwen reads:

"(1) In a car seat or similar device, a walk over back with a single link at one end and a plurality of links at the other end and means for causing said links to move in unison when the back is reversed."

His third claim reads:

"(3) In a car seat or similar device, a walk over back with a single link at one end and a plurality of links at its other end, said single link being fixed to a shaft, a crank fixed to said shaft, a link connected with said crank, and means connecting said link and the plurality of links so that the link secured to the back will act in unison when it is reversed."

But more, Curwen appealed from the rejection of certain of his original claims, and on appeal the examiner submitted the following:

"The references of record show that car seats have been provided with a plurality of links at each end as shown in Rochester and Aze et al. The references also show that car seats have been provided with a single link at each end. See Norcross and Barney. Rochester and Aze et al. show a car

seat provided with a plurality of links at each end and means for shifting the seat when the back is reversed. Norcross shows a car seat with a single link at each end and means for shifting the seat when the back is reversed. In view of the above references, it is the opinion of the examiner that applicant's invention does not lie in the number of links used at each end of the seat, that the number used is purely a matter of judgment; but after having determined on the number of links to be used, applicant's invention lies in his novel means for producing an operative structure. In view of the prior art, applicant's novel means resides broadly in the subject-matter covered by claim 1, viz., a means for moving these links in unison. Claim 7 is believed to be met by Aze et al. and Barney; Aze showing a plurality of links at one end and Barney a single link at one end. Claim 8 differs from claim 7 in the addition of stops to limit the movement of the links. Barney shows stops, 3, and Aze shows stops, r. Claim 9, taken in connection with claim 7, Aze et al. and Norcross both show means for tilting the seat cushion when the back is reversed. Claim 12, Aze, shows a plurality of links at one end; Norcross shows a single link at one end; Aze shows stops, r, and means for tilting the seat when the back is reversed."

Note the statement:

"In view of the prior art applicant's novel means resides broadly in the subject-matter covered by claim 1, viz., a means for moving these links in unison."

On appeal this was approved. Therefore the defendant can claim no warrant in the Curwen patent for using or appropriating the complainant's invention. The patentable invention disclosed in the Aze and Gilfillan patent relates to one thing, and the patentable invention disclosed in Curwen relates to an entirely different thing. It will be specially noted that claim 1 of the Curwen patent, as allowed (at first rejected on Aze and Gilfillan, No. 491,761, February 14, 1893, the patent in suit), provides as one element "means for causing said links (arms) to move in unison when the back is reversed." Here the Patent Office held the entire Curwen invention to reside. The pivoting at right angles to the plane of the back has nothing directly to do with these means and is not mentioned as a part of them. In regard to the other element of claim 1, "a single link at one end and a plurality of links at the other end," the Patent Office said, December 3, 1903:

"Claims 1, 6, 7, 8, 9, 10, 11, and 12 are rejected on the following patents: Aze and Gilfillan, 491,761, February 14, 1893; Rochester, 595,415, December 14, 1897; Koehler, 679,081, July 23, 1901; Norcross, 610,719, September 13, 1898—car seats. These claims do not patentably differ from these references. In claim 1 it is evident that if one link of Aze is left off, the back will operate the same as if it is on, although it might not operate so smoothly. Then, again, it is old to have double links at both ends and also single links at both ends, and there is no invention in merely using the combination of the two kinds. All links move in unison, otherwise the seat would not be operative. The same remarks hold for claim 6, to which stops have been added. All seats have stops for limiting the movement."

The seat used by the defendant is plainly and distinctly differentiated from the Wheeler seat covered by the patent in suit in respect to the subject-matter of the invention disclosed by each, as such patentable invention of each relates to a distinct subject-matter, the one to the mode and manner of pivoting the arms to the back of the seat, the other to the means for connecting the pair of arms at one end of the seat to the arm or arms at the other end so as to cause them to work

in unison; but with this the mode and manner of pivoting the arms to the seat have nothing whatever to do, and are not mentioned in the claims. Hence the infringing device of the defendant's seat which does not embody the invention of the Curwen patent, but which does embody the invention of complainant's patent, cannot possibly be differentiated from complainant's device covered by his patent and alleged to be infringed. The case is not within the principle of Kokomo F. M. Co. v. Kitselman, supra, or Cimiotti U. Co. v. Am. Fur Ref. Co., supra. I do not think you can differentiate by substituting an exact equivalent in a nonessential of the claim or an essential which does not go to the gist of the claim, so as to escape infringement. This would be using shadow as substance. The mechanical movement used by Aze and Gilfillan may be old, but they have applied it in a new and novel manner, in a new place to meet a novel exigency.

This court therefore holds and decides:

1. That the claims in issue of the Aze and Gilfillan patent disclose patentable novelty in the respects named, and were not anticipated, and are valid.

2. That Aze and Gilfillan were the first and only inventors, and that Cushing was not the inventor.

3. That while the car seat used by defendant has means for connecting the arms at the two ends of the seat, which means show patentable novelty and are protected by the Curwen patent, same are not used by complainant, and have nothing to do with the invention of Aze and Gilfillan.

4. That, while the complainant is limited by the terms of its patent to a seat having a pair of arms at each end of the seat, it is not so limited that one who uses its pair of arms pivoted to the back and frame, in the mode and manner required by its patent at one end of the seat, does not infringe when it uses a full equivalent for the second pair of arms at the other end; such equivalent consisting of a pair of arms performing every function of complainant's arms.

5. That defendant's seat in its patentable novelty and patentable device can be and is differentiated from complainant's seat and its patentable device; but in its infringing devices it is not so differentiated, and cannot be, and defendant uses and appropriates the patentable and patented device of complainant's patent.

6. That the cars used by the defendant appropriate and use the patentable and patented device of complainant's patent, Aze and Gilfillan, and therefore defendant infringes each of the claims in issue.

There will be a decree for the complainant for an injunction and an accounting.