## I. P. MORRIS CORPORATION et al. v. S. MORGAN SMITH CO.

District Court, M. D. Pennsylvania. August 23, 1929.

No. 536.

Edwards, Sager, & Bower, of New York City, for plaintiffs.

Howson & Howson, of New York City, for defendant.

JOHNSON, District Judge. The bill of complaint charges the defendant with infringement of letters patent No. 1583415, granted May 4, 1926, to Lewis F. Moody, title to which is now vested in plaintiff, covering a high-speed hydraulic turbine of the propeller type, and prays for an injunction and an accounting. The defendant filed its answer attacking the validity of plaintiffs' patent and denying infringement.

On June 28, 1918, Lewis F. Moody filed his application for letters patent covering a complete hydraulic turbine of the propeller type, which secures a high specific speed where the water ranges from a comparatively low to a comparatively high head.

On October 20, 1917, nine months prior to the filing of the Moody application, Forrest Nagler filed his application for letters patent covering a high-speed hydraulic turbine of the propeller type. The Moody and Nagler applications became involved in interference proceedings. In Nagler's application he confined his claims to an open runner, while Moody, though showing the closed runner in his drawings, made no special claim for a closed runner, supposing that the field was open and he was entitled to state his claims as to the runner in broad terms and that his claims and drawings would permit him to use either the closed or open runner in his combination.

During the interference proceedings, Moody attempted to amend his application so as to confine his runner to the closed type, but was prevented on account of the interference proceedings. On March 31, 1923, when the field was open to his invention of a closed runner in his peculiar setting, he did file a divisional application in which claims were made substantially similar to the claims now presented.

At the termination of the interference proceedings, Nagler had pre-empted the field of the open runner in a turbine adapted to high specific speed and the field was left open to Moody for the closed runner. Then, by amendment, June 5, 1925, Moody introduced a number of claims, directed to the general subject-matter, in the parent application, and in June, 1925, an amendment was filed limiting the claims to the blade area of the runner being equal to or slightly greater than the disk area. Objection being made to the form of these claims, they were later put into their present form, on which application the patent in question was granted to Moody. "The insertion of new claims in connection with a pending application is allowable, provided the substance of the claims was disclosed by the original specifications and drawings. Godfrey v. Bames, 1 Wall, 317, 324, 17 L. Ed. 684; Smith v. Goodyear, 93 U. S. 486,

499, 23 L. Ed. 952; Hobbs v. Beach, 180 U. S. 383, 396, 21 S. Ct. 409, 45 L. Ed. 586; Western Elec. Co. v. Sperry Co., 58 F. 186, 196, 7 C. C. A. 164; Bowers v. San Francisco Bridge Co. (C. C. A.) 69 F. 640; Cleveland Foundry Co. v. Detroit Vapor Stove Co., 131 F. 853, 68 C. C. A. 233; Victor Talking Machine Co. v. American Graphophone Co., 145 F. 350, 76 C. C. A. 180; Proudfit Co. v. Kalamazoo Co., 230 F. 120, 144 C. C. A. 418; General Electric Co. v. Continental Fibre Co., 256 F. 660, 664, 168 C. C. A. 54." Diamond Power Specialty Corp. v. Bayer Co. (C. C. A.) 13 F.(2d) 337, 339, 340.

Moody's amended application as finally granted contained ninety-eight claims, but the plaintiffs in this suit are relying upon only seven, to. wit, claims 65, 67, 68, 72, 73, 74, and 75, which the plaintiffs contend have been infringed by the defendant. All of these claims describe the combination of an inlet adapted to speed up the water and turn it from radial to axial flow as a whirling mass of high velocity and an axial flow runner of low pitch variously described in the several claims.

The description of the runner blades of the Moody turbine as set forth in the various claims in issue fall into three classes, as follows:

Claim 65 states that the runner blades shall have "an area not less than the disk area of the runner." Claim 67 differs only in limiting the number of these blades to not more than six. Claim 75 describes a "blade area substantially equal to the disk area of the runner."

Claims 72 and 73 describe the relation of the runner blades as "the blades being so formed that when viewed in axial projection no open space is left between successive blades for the greater portion of the blade length." Claim 68 states that "the axially projected area of said blades" shall be "not less than the disk area of a circle passing through the tips of said blades." Claim 74 describes this relation as "a projected blade area not less than the disk area and in addition contains substantially the same description as that found in claims 72 and 73.

The functional effect of plaintiffs' combination is shown by the evidence, and is described by plaintiffs' counsel as follows: "By making this combination one inevitably arrives at a hydraulic turbine in which the water is speeded up into a solid mass of high velocity whirling water, which is turned and directed upon a wheel having the requisite low pitch to give high specific speed, and having the requisite blade area to distribute the intensity of the pressure drop across the wheel over a large area and also insure that the entrance edge of one blade is near enough to the exit edge of the following blade to cause the several blades to co-operate together to exert a guiding or orifice effect upon the water, and so in effect causes the wheel to lock in step with or grip itself to the water, and so resist any tendency of the water to depart from the under surface of the blades, or the water or wheel to depart from the necessary parallel relation between the surface of the blade and the water flowing along the surface."

The prior art in the hydraulic turbine consisted mainly of the Francis type in America and the Jonval type in Europe, limited to low specific speed, the Nagler hydraulic turbine in America, and the Kaplan hydraulic turbine in Europe of the high specific speed propeller type with open runner adapted chiefly to comparatively low heads, but a feature of the Moody hydraulic turbine, as patented, has the combination of an inlet passage creating a whirling mass of water of high velocity and turning said mass from radial towards axial flow and a low-pitch axial flow runner in which the blades area is not less than the effective area of the passage in which the runner is located. This combination of Moody of an inlet adapted to create a whirling mass of water of high velocity and a runner of the closed type is not found in the prior art. By this combination, Moody produced a hydraulic turbine which can be used where the head of water is between 30 and 60 feet and which at any head is more stable and less liable to cavitation and disturbance than any prior machine. The novelty of this invention is further shown by the fact that Moody succeeded in doing what those who represented the prior art said could not be done, namely, the successful use of a high-speed propeller turbine of the closed runner type under a high head of water.

An illustration of the successful use of plaintiffs' hydraulic turbine is their successful installation at the power company plant in Manitoba, Canada, which operates under a head of 56 feet. Thus we have in favor of the validity of plaintiffs' patent not only the presumption arising from the issuance of the patent, Fairbanks, Morse & Co. v. C. A. Stickney & Co. (C. C. A.) 123 F. 79; Kokomo Fence Mach. Co. v. Kitselman, 189 U. S. 8, 23 S. Ct. 521, 47 L. Ed. 689; Miller v. Eagle Mfg. Co., 151 U. S. 186, 14 S. Ct. 310, 38 L. Ed. 121; Nash Engineering Co. v. Trane (D. C.) 20 F.(2d) 439; Beldam v.

Garlock Packing Co. (D. C.) 24 F.(2d) 852, but also the convincing evidence of an improvement of and an advancement over the prior art and accomplishment of an advantageous result or use of a hydraulic turbine which, up to the time of Moody's disclosure, representatives of the prior art said could not be accomplished.

From the foregoing statement of the case, it appears that plaintiffs' patent is a novel and useful improvement upon the prior art and is valid.

The question remains whether plaintiffs' machine, as patented, has been infringed by the defendant.

In the defendant's machine, the inlet to the defendant's turbine is so shaped as to create a whirling mass of high velocity, and this is not denied by the defendant, but the defendant contends that it uses an open runner. In the defendant's runner the actual blade area is equal to or greater than the disk area, but the projected area is less than the disk area. In the defendant's Nacoochee installation, the projected vane area is 92 per cent., and the actual vane area is 103 per cent. of the disk area. Thus it clearly appears that the defendant's Nacoochee installation of its hydraulic turbine infringes plaintiffs' claims 65 and 67 in their patent, comprising blades with an area not less than the disk area of the runner, and claim 75, covering blade area substantially equal to the disk area of the runner.

Claims 72 and 73 describe the runner blades of plaintiffs' patent in this suit as overlapping so that, when viewed in axial projection, no open space is left between successive blades for the greater portion of the blade length. Defendant's runner does not have this overlapping relationship. There appears to be a very small open space between successive blades for the entire length of the blades so that you can see through them, but a patent covers all forms in which the invention may be copied. The drawings and specifications set forth one mode of constructing the machine described in the claims. It is presumably the best mode, but the patentee is not debarred thereby from developing his invention in other forms. "The principle of the invention is a unit, and invariable; the modes of its embodiment in the concrete invention may be numerous and in appearance very different from each other." 2 Robinson on Patents, 485. "The patentee, having described his invention, and shown its principles, and claimed it in that form which most perfectly embodies it, is * * * deemed to claim every form in

which his invention may be copied." Winans v. Denmead, 15 How. 330, 343, 14 L. Ed. 717. "An infringement takes place whenever a party avails himself of the invention of the patentee, without such a variation as constitutes a new discovery." Norton v. Jensen (C. C. A.) 49 F. 859.

The defendant, by appropriating all of the elements of claims 72 and 73, even though its runner blade differs in form, cannot avoid the charge of infringement in respect to these two claims.

In plaintiffs' claims 68 and 74, the projected blade area is not less than the disk area. As originally presented, these claims described the axially projected area of the blades as being "substantially equal" to the disk area. This was amended to "not materially less than," but was again objected to on the ground that the drawing disclosed blades with a projected area of more than the disk area. The claims were again amended by the patentee to read "not less than," and, as so amended, they were allowed.

The amendments made by Moody were not made because of the state of the prior art. Nagler had stipulated that his runner blades had a projected area of not more than 80 per cent. of the disk area, and Moody was free to use anything so far as the prior art was concerned which did not conflict with Nagler. The patent was not restricted by Moody to the precise form embodied thereon. His preamble states: "These and various other objects of my invention will become apparent on consideration of a disclosure of a limited number of specific forms in which the invention may be embodied as set forth in the following specification taken with the accompanying drawing. It will be understood that further modifications than those shown in the drawings can be made that will fall within the scope of my invention."

It is clear that the amendments were made to meet the objection of the Patent Examiner that the claims did not correspond with the runner as shown in the drawings, and not because of the general terms of the patent, or the prior art.

"Where a claim includes a specific element in a specifically limited form, where such limitation is not required by the general terms of the patent or the state of the prior art, the court may construe the claim nevertheless with a scope commensurate with the invention." Reece Button-Hole Mach. Co. v. Globe, etc., Co. (C. C. A.) 61 F. 958; Metallic, etc., Co. v. Brown (C. C. A.) 104 F. 345; McCormick, etc., Co. v. Aultman & Co. (C.

528

C. A.) 69 F. 371; Heywood, etc., Co. v. Syracuse, etc., Co. (C. C.) 152 F. 453; Hillborn v. Hale, etc., Co. (C. C. A.) 69 F. 959.

The drawings shown in the patent do not limit the patentee to that particular construction unless the claims themselves contain such express limitation or the art is so crowded that the patent is limited to the form shown. It is clear from a study of the prior art and the Nagler and Moody patents that the combination of an inlet creating a whirling mass of water of high velocity with an axial flow runner has been covered by Nagler and Moody; Nagler pre-empting the open runner field, and Moody covering the closed runner field. The defendant has sought to take advantage of the fact that the projected area of the Nagler runner blades was stipulated to be not more than 80 per cent. of the disk area and the projected area of the Moody runner blades was stipulated to be not less than 100 per cent. of the disk area, and had treated the ground between as open to the use of any person. But, since every such runner must operate functionally either as an open runner or a runner of the closed type, it is clear that any one making the combination pre-empted by Nagler or Moody must infringe one or the other. The real test of infringement is that the defendant's runner functions as a runner of the closed type, although slightly differing from the Moody runner in form. Winans v. Denmead, 15 How. 330, 14 L. Ed. 717.

It follows, from the description of plaintiff's and defendant's runners and the fact that the defendant's runner functions as a closed runner, that the defendant has infringed plaintiffs' claims 68 and 74.

The defendant contends that it has used its hydraulic turbine wheel of high specific speed under its purchase of the Bell patent. The Bell patent does not cover a closed runner in a setting as specified in plaintiffs' patent. It is confined to a runner of not more than three helicoidal or screw-shaped blades. The defendant has not followed the Bell patent, but has adopted a runner similar to the plaintiffs' runner, which is actually a closed runner or one which functions as a closed runner in a setting similar to plaintiffs' setting.

In conclusion, the court finds that the plaintiffs' claims 65, 67, 68, 72, 73, 74, and 75 are infringed by the defendant's hydraulic turbine.

Plaintiffs are entitled to the usual decree for an injunction, reference, accounting, and costs; and it is so ordered.