GENERAL ELECTRIC CO. v. CONTINENTAL FIBRE CO.

(Circuit Court of Appeals, Second Circuit. February 13, 1919.)

No. 174.

1. PATENTS ⬳75—PRIOR PUBLIC USE—EXPERIMENTAL USE.

The use of a number of gears made of compressed cotton fibers in a plant where the inventor of such gears was employed for experiment, and to convince skeptical superiors of their merit, is not a public use which will defeat the right to a patent on an application filed more than two years after the first gear was constructed, but less than one year after such gears were on the market.

2. PATENTS ⬳110—APPLICATION—CONTINUANCE OF FORMER APPLICATION.

An application for a patent for gears made of compressed textile material, the specific material used being cotton batting, describes the same invention as a prior pending application describing the material as compact layers of textile fibers; and, there being no showing of their intention to abandon the original invention, the subsequent application can be treated as a continuation of the former.

3. PATENTS ⬳69—ANTICIPATION—VAGUE PUBLICATION.

A publication that another firm had sent out a catalogue of a silent gear made of fiber of prepared cotton is too vague to enable an expert to carry the device into practical use, and does not invalidate a subsequent patent for a gear made of compressed cotton fibers.

4. PATENTS ⊕⇒328—CONSTRUCTION—LIMITATION OF CLAIMS—NOVEL INVENTION.

The use of compressed textile fabrics, unchanged by vulcanizing, for gears, was fundamentally new in the gear art, though a similar use had been made in other arts, and the Miller patent, No. 1,061,770, for gear composed of that material, is entitled to the advantages of broad equivalence flowing from absolute novelty of invention.

5. PATENTS ⊕⇒328—INFRINGEMENT—COMPRESSED FIBER GEARS.

The Miller patent, No. 1,061,770, for a gear of compressed textile fabrics and means for holding the material in a compressed state, is infringed by a gear composed of fibers held in place by the patented composition bakelite; since the fundamental merit of the patented gear is the resistance of a large number of fibers within a small space, which is also the fundamental merit of the infringing article.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the General Electric Company against the Continental Fibre Company for infringement of patent. Decree for defendant, and complainant appeals. Reversed and remanded.

Action is upon claims 1, 2, 3, 5, and 6 of patent to Miller dated May 13, 1913, No. 1,061,770.

The subject-matter of the patent is a "gear wheel." Claim 3 is as follows:

"A gear composed of compressed spinnable textile fibers and means for holding said material in compressed state."

This claim is typical of all those in suit except No. 6, which is as follows:

"A gear having its toothed body portion composed of layers of textile fabric made of spun yarn."

The thing invented by Miller, described in the specification and sold by the plaintiff company, is a gear or cogwheel made of cotton highly compressed and held under compression by metallic end-plates secured by rivets passing through the compressed cotton which provides the teeth. A disc or blank is made in this manner and teeth cut to suit, as has long been the custom in respect of metal cogs.

Miller was in 1908, and long had been, the master millwright of the plaintiff; he recognized, as had many other machinists and inventors, that the desirable qualities of a gear were that it should be strong, durable, tough, elastic, oil and water proof, not subject to atmospheric or thermal changes, not attractive to vermin, and as noiseless as possible.

It was part of his work to watch and overhaul (among others) a machine known as a punch and shear, capable of shearing boiler plates up to 1¼ inches in thickness. He tried every type of gear wheel known, and finally thought of attempting to make one out "of cloth—one morning while I was pulling my clothes on." He thereupon made a gear blank out of a worn-out buffing wheel, a tool composed of layers of cotton or linen canvas; tried it on a small machine; and shortly, out of similar rag-bag material, made a cog which actually drove the above-mentioned punch and shear for several years. Miller communicated what he had done to his superior officer, Mr. Riddell, himself an inventor in this line of mechanics. Plaintiff, as Miller's assignee, filed application for a patent on February 12, 1909.

Contemporaneously Miller made more wheels. They were placed in increasing numbers on tools in plaintiff's factories, and experiments were conducted with textile materials other than woven cotton cloth, with the result that what is commonly known as cotton batting came to be used; and, the value of Miller's gears having been experimentally demonstrated, plaintiff offered them for sale in the latter part of 1910. The public appreciation of the product is sufficiently shown by the growth of sales from 1,570 gears in the year 1911 to annual sales of slightly under 200,000 immediately before

the trial of this cause. It is admitted that Miller's gear possesses all of the desirable qualities hereinabove enumerated.

It is rare that the history and development of any invention is shown so clearly and without any contradiction whatever.

When application was filed in 1909, Miller had not made gears of cotton batting, and, while he fully disclosed the advance embodied in his cotton cogs, he described his new component as consisting of "layers" or "piles" of "textile fabric," and propounded as a typical claim "a gear having a toothed part composed of compacted layers of textile fabric." His application was rejected on references upon which no reliance is now placed. Indeed, it is difficult to understand the office attitude displayed by the file wrapper contents.

On July 26, 1910, the word "fabric" was in some instances amended to "material." But on June 27, 1911, a new application was filed specifically as a continuation of the application of 1909. In all of the claims propounded and finally allowed (except the sixth), the body of the gear was described as of "textile material"; but the sixth claim has from the beginning adhered to the phrase "textile fabric." The words "spinnable textile fibers" came in by amendment as a concession to office opposition which was finally overcome only by appeal to the examiners in chief.

The application of 1911 was filed within a year of the last office action on that of 1909.

Defendant does not manufacture gears, but makes and sells discs capable of being cut into gears by any trained mechanic, which discs are composed of layers of cotton duck impregnated with and surrounded by a substance commercially known as "bakelite." The content of each gear is approximately 60 per cent. cotton duck and 40 per cent. bakelite, which latter is an invention of Mr. L. H. Baekeland, consisting of a mixture of "phenol, or its homologues, and formaldehyde, or its polymers." This mixture, when sufficiently heated, is transformed into "a hard body unaffected by moisture, insoluble by alcohol or acetone, infusible and resistant to acids, alkalies and almost all ordinary reagents." Baekeland patents, Nos. 942,699, 942,852, 949,671, 1,019,406. The production of this hard, infusible, and indecomposible bakelite is hastened, and improved by adding pressure to heat, because pressure hastens the process of hardening and avoids air bubbles. But pressure is not necessary to make bakelite; heat applied to the aforesaid mixture will do it in time. And it is in result the same substance with or without pressure added to the heat.

It is not doubted or denied that defendant's compound of cotton duck and bakelite makes a gear functioning exactly as does Miller's. It is denied that this result is obtained in the same way, for the same reasons, or by substantially the same means.

The court below held the Miller patent valid but not infringed by a cog wheel made of defendant's product. From decree accordingly plaintiff appeals.

Charles Neave, of Boston, Mass., and L. F. H. Betts, of New York City, for appellant.

Kerr, Page, Cooper & Hayward, of New York City (Thomas B. Kerr, of New York City, Vernon E. Hodges, of Washington, D. C., and John C. Kerr, of New York City, of counsel), for appellee.

Before ROGERS and HOUGH, Circuit Judges, and MAYER, District Judge.

HOUGH, Circuit Judge (after stating the facts as above). In this court some measure of invention in Miller's patent is no longer denied. Nor is it doubted that a cotton-rag gear wheel was made and used in August, 1908, as above set forth.

It is contended:

(1) That a claim for a gear of "spinnable textile fibers," if construed to cover one made of cotton duck, is invalid; because there were

two years of public use prior to the application of June 27, 1911, of Miller's original cotton gear which was composed of a "textile fabric"—a phrase plainly covering cotton duck.

(2) Even if Miller's date of invention be. allowed as August, 1908, certain English publications, as early as March 20, 1908, regarding "Unica silent gears made of fiber of prepared cotton," are sufficient evidence of anticipation. And

(3) There is no infringement even of the sixth claim, because defendant's product is not composed of layers of textile fabric, but of bakelite reinforced by such layers, and the completed gear disc is a "solid, hardened, homogeneous mass" wholly different "in nature and attributes" from Miller's collection of fibers held together "by pressure applied externally."

[1] 1. We incline to think that the record does not show two years of public use before June 27, 1911. Any use, public or otherwise, of Miller's reduction to practice largely depended upon the favor with which his device was received by his superior, Mr. Riddell. That gentleman had the conservatism of one who had himself taken out a patent in the same field of art (No. 464,896) ; and it was not until June of 1909 that he said of Miller's gear :

"We have the goods here (i. e., in the General Electric Works) running every day, giving a practical demonstration, some giving the hardest kind of service."

There were then some 70 or 80 wheels in use, and Mr. Riddell said of them :

"Some of our own engineers and others with whom I have spoken have been inclined to poke fun at the idea. I was myself inclined to be a little skeptical when the matter was first brought to my attention."

Indeed, the general attitude of practical men toward the new departure is well illustrated by a facetious proposal for a "catalogue cover" for Miller's "new process rag pinion," whereby it is stated (with appropriate illustrations) that the raw material is to be obtained from the family wash line, and a branch office established at "Bellevue." We do not think that Miller's invention passed beyond the stage of daring experiment until this attitude of satirical disbelief had been forgotten and the commercial article was offered for sale—an event which did not occur until the fall of 1910.

[2] But irrespective of the foregoing finding, we hold that as matter of law Miller was justified in calling his application of 1911 a continuation of that of 1909. There never was any allowance under the earlier specification. Such decisions as Weston v. Empire, etc., Co., 136 Fed. 599, 69 C. C. A. 329, do not apply. It is not doubted that one application may, under certain circumstances, be a continuation of a prior application (Model Bottling Co. v. Anheuser, 190 Fed. 573, 111 C. C. A. 389) and it is not asserted in this instance that there was any abandonment of invention, which is a different thing from abandonment of application (Western Elec. Co. v. Sperry, 58 Fed. at page 191, 7 C. C. A. 164; Hayes-Young, etc., v. St. Louis, etc., Co., 137 Fed. 80, 70 C. C. A. 1).

We doubt not that Miller filed his second application in order to add or insert language apt for describing his use of cotton in a cruder state than that of woven cloth; but he abandoned nothing by intent. His applications were co-pending, and the matter is far within our decision in Victor, etc., Co. v. American, etc., Co., 145 Fed. 350, 76 C. C. A. 180; and Corrington v. Westinghouse (C. C.) 173 Fed. 69. Where an intent to continue is manifest (as it is here), or is proven, the question is (as put in the Victor Case, supra) whether the specification of the earlier application was sufficient as a basis for the claims ultimately founded on the later application. Or as put in Field v. Colman, 40 App. D. C. 598, the doctrine of continuity "broadly depends upon whether the substituted application is for the same invention as that disclosed in the original application."

Applying these rules, the queries in this case, concretely put, are these: Could the claims in suit have been properly issued on the original specification; or, if all the claims had used the words "textile material" or "textile fabric," would it have been an infringement to make gears not differing from Miller's first embodiment otherwise than by substituting cotton batting for cotton rags?

We answer both these questions in the affirmative for reasons largely depending upon the nature and importance of Miller's invention, as hereinafter set forth. We therefore hold the patentee's date of invention to be August, 1908.

[3] 2. The defense based upon publications regarding the English "Unica" gears rests upon extracts from the periodicals "Engineering," and "The Practical Engineer" of London, dated March 20 and November 27, 1908.

Assuming the invention date above awarded Miller, only the earliest publication requires attention, and that consists in a statement that—

Certain manufacturers "have sent out a catalogue of their Unica silent gears made of fiber of prepared cotton. These, it is stated, are unaffected by oil. * * *"

The later publications speak, one, of the pinions, as "made of compressed cotton"; the other uses the words "prepared cotton."

While the evidence is persuasive that the Unica gears were merely a variety of vulcanized fiber gears, we reject the publication of March 20, 1908, and would reject the subsequent publications, if they were relevant, on the ground stated fully in Baedische v. Kalle, etc., 104 Fed. 802, 44 C. C. A. 201. The vague statements of result contained in the newspaper articles offered in evidence would not have given in 1908, to even the most skilled, any information enabling an expert to carry into practical use Unica gear, or any other mechanical device. Therefore any or all of them are insufficient to invalidate the patent in suit, or even to limit or modify its scope.

[4] 3. Whether infringement exists is a question depending largely on the importance attached to Miller's invention. If the art of producing silent, waterproof, vermin-proof, tough, durable, and elastic gears be considered as an art by itself, there is no prior art detracting from or limiting Miller's inventive conception. Noiseless gears had long since been a desideratum, and nonmetallic substances, i. e., wood,

rawhide, leather, papier-mâché, and vulcanized fiber, had all been tried and found wanting. The use of textile fibers unchanged by vulcanization was fundamentally new in the gear art; and prior patents for buffing rolls (Poole, 188,670) and friction wheels (Rockwood, 300,013) are entirely irrelevant.

Whatever advantages, therefore, in respect of breadth of equivalents flow from an absolute novelty of inventive thought—are justly due to Miller.

[5] Whether the bakelite gear produces Miller's result in substantially Miller's way depends fundamentally on ascertaining the reasons why the original cotton-rag cog wheel worked and kept on working for several years.

We find that by compression of spinnable fibers, whether contained in cotton batting or in cotton cloth, the patentee obtains an enormous number of these fibers in frictional contact contained in a very small space.

The initial pressure exerted in the process of manufacture depends upon the original looseness of fiber in the raw material. Cotton batting requires more pressure than cotton cloth.

But when the requisite number of fibers have been compressed into the requisite dimension, a considerable part of such compression is permanent, and the back-pressure or expansive tendency of what is held between Miller's containing plates is (in respect of cloth gears) sometimes as low as 500 pounds and (in the case of a cotton batting gear) never higher than 2,500 pounds. Thus, the merit or working virtue of the patented gear consists solely in the presence within a given space of a relatively enormous number of vegetable fibers in frictional contact with each other. The only function of the metal sides and rivets is to keep these fibers in place.

Defendant's product, size for size, has, we are convinced, substantially the same number of fibers, which are also in frictional contact, and held in place, not by metal sides, but by the interstitial permeation of bakelite—a substance in itself and its attributes most remarkable, but which in relation to gears has no other relation to the cotton fibers that enable the gear to do its work, than has the metal container of Miller. The whole contention on the question of infringement is summed up in the inquiry whether defendant's product is cloth reinforced with bakelite instead of metal, or whether it is composed of bakelite reinforced with cloth.

It being plainly true that for gear purposes the only strength in defendant's article is that of the cloth, it must follow that defendant's is a cloth gear held together by bakelite. This remarkable substance is as brittle as it is hard and unchangeable. A pure bakelite gear would be worthless for the lightest machinery. There is no chemical change wrought by the mechanical union between cloth and bakelite; the cloth remains cloth, and the bakelite remains bakelite. The sole function of the bakelite in defendant's gear disc is the same function as that of the rivets and metal sides in Miller's original device.

The fact that it requires no more than 750 pounds initial pressure to drive defendant's cotton cloth into desired contiguity, fiber to fiber,

is much dwelt upon in defense. This may well be a manufacturing advantage on defendant's side. The pressure is substantially the same as the ultimate pressure or back pressure in Miller's cloth gear. But bakelite is neither compressible, ductile, nor elastic; and when bakelite is the holder, container, or restrainer of pressure, whatever shape is given by the initial compression remains absolutely fixed as soon as the bakelite hardens.

For these reasons we consider that defendant's product responds to all the claims in suit; that the claims cover a basic and wholly novel idea, viz., the attainment of a strength sufficient to drive heavy machinery by juxtaposing a sufficient number of feeble textile fibers within a given space; and that this thought, which vitalizes the patent in suit, is the same thought which enables defendant's gears to do their work. It may well be that in attractiveness of appearance, and lightness of weight, defendant's bakelite retainer of compression is superior to Miller's metal sides. But what makes the gear a gear is the same thing in both products. Therefore infringement exists.

It is said that bakelite gear is "self-sustaining." This is only true in the sense heretofore pointed out, viz., that no plates or rivets are required because the bakelite itself, by coating or permeation, is a fair and indeed an exact mechanical equivalent to the end-plates and the rivets of plaintiff's gear wheels.

As defendant does not make or sell completed gears, but a material which when in discs makes gear making easy, and when in other forms may have other uses not related to machine-driving, the injunction to issue under this decision may require careful drafting; but this record enables us to do no more than call attention to a question that may be important—and may amount to nothing.

We may say (but for lack of evidence this is not a holding) that we perceive no reason, on this record, why defendant's product cannot be used, if suitable, for any purpose not amounting to a gear; that being the sole subject of Miller's patent.

Decree reversed with costs, and cause remanded for further proceedings not inconsistent herewith.