AMERICAN LAUNDRY MACHINERY CO. et al. v. PROSPERITY CO., Inc.

(Circuit Court of Appeals, Second Circuit.    January 25, 1924.)

No. 176.

1. Patents ⬤⟿310(1)—Good pleading for plaintiff to negative exceptions of statute in bill.

Under Rev. St. § 4886 (Comp. St. § 9430), it is good pleading for plaintiff in a patent suit to negative the exceptions of the statute in his bill.

2. Patents ⬤⟿109—Number of patents covering improvements left within discretion of Patent Office.

It being difficult to lay down general rules determining when improvements should be embraced in one or more patents, discretion must be left to the Patent Office.

3. Patents ⬤⟿109—Division before action on merits.

If a single application claims several inventions, and the independence of the inventions be clear, division will be insisted on before any action on the merits, but otherwise, at any time during the pendency of the application, in view of rule 42.

4. Patents ⬤⟿109, 111—Applicant, not agreeing with ruling requiring division, may appeal.

If applicant for patent does not agree with ruling requiring division, he may appeal, and thereby probably delay obtaining any patent; but no applicant can justly be blamed for acquiescing in a command by lawful authority, much less can he properly be made to suffer loss by obedience.

5. Patents ⬤⟿109—Two-year limitations does not apply to divisional application.

The two-year limitation for the filing of applications (Rev. St. § 4886 [Comp. St. § 9430]) does not apply to a divisional application.

6. Patents ⬤⟿109—Divisional application relates back to original.

In the absence of laches, estoppel, or intervening rights, a divisional application relates back to the original from which it was carved, and will be regarded as having the filing date and priorities of that original.

Appeal from the District Court of the United States for the Northern District of New York.

Suit in equity by the American Laundry Machinery Company and another against the Prosperity Company, Incorporated. From a final decree (294 Fed. 144) for defendant, plaintiffs appeal. Reversed and remanded.

Plaintiffs brought the usual patent bill on No. 1,379,601 and another patent. In respect of the above-numbered patent the bill states in usual form that the patentee, being "the first," etc., "inventor of certain improvements not known or used by others in this country before his invention, * * * and not patented or described in any printed publications in this or any foreign country before his invention thereof or more than two years prior to his application, * * * and not in public use or on sale in this country for more than two years prior to [said] date of application, * * * and not patented * * * on an application filed more than twelve months prior to his said application," did on June 7, 1916, file in the Patent Office an application for letters patent. It is then pleaded that, "while the said application aforesaid was pending, in full force and effect, said invention never having been abandoned it was duly divided, and a divisional application for the said invention" was duly filed by the patentee on October 31, 1919, which divisional application ripened into the patent in suit on May 24, 1921.

This bill was met by a motion to dismiss, because "it does not appear from any allegations in the bill of complaint that, more than two years prior to the date of filing of the alleged divisional application, * * * the alleged inventions of said patent (a) were not in public use or on sale in this country, and (b) were not patented or described in any printed publication in this or any foreign country." This motion the District Court granted and dismissed the bill. Plaintiffs appealed.[1]

Charles Neave, of New York City, B. W. Brockett, of Cleveland, Ohio, and Maxwell Barus, of New York City, for appellants.

Arthur E. Parsons, of Syracuse, N. Y., and Albert F. Nathan, of New York City, for appellee.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The matter at bar is interesting and not unimportant; for, if the order appealed from be well founded, its effect is to render a familiar portion of Patent Office practice extremely dangerous for those acquiescing therein, yet such danger is said to be created by a decision of the Supreme Court. Chapman v. Wintroath, 252 U. S. 126, 40 Sup. Ct. 234, 64 L. Ed. 491.

[1] Under what the cited decision calls "the statute which is fundamental to all others in our patent law" (R. S. § 4886 [Comp. St. § 9430]), patents are granted to those inventing new and useful arts which (inter alia) were not in public use, and not patented or described for more than two years "prior to his [the petitioning inventor's] application." Under this act it is good pleading for plaintiff in a patent suit to negative the exceptions of the statute in his bill, and this the present plaintiff did, as shown above.

---

[1] The form of the order appealed from is open to criticism, and it is not overlooked that the order as entered affects only one patent; but as these technical difficulties might have been overcome in the court below, and neither party has referred to them on this hearing, we pass them by, without by silence approving the practice.

[2] It being "difficult, perhaps impossible," to lay down general rules determining when improvements should be embraced in "one, two, or more" patents, discretion must be left to the Patent Office on this "nice and perplexing question." Bennet·v. Fowler, 8 Wall. 445, 448 (19 L. Ed. 431). Accordingly the Office has for many years made rules on what are too well known as "divisional applications" to need explanation; but the statutes may be searched in vain for anything about division.

[3, 4] The sense of the rules is that, if a single application claims "several inventions" and the "independence of the inventions" be clear, the division will be insisted on "before any action on the merits," but otherwise, at any time during the pendency of the application; that is, division may be, and often is, required years after application filed, and when it is required the applicant must "elect" to which invention he will limit his pending application, while the other inventions "may be made the subject of separate applications." Rule 42. If the applicant does not agree with the ruling requiring division, he may appeal, and thereby probably delay obtaining any patent; but no applicant can justly be blamed for acquiescing in a command by lawful authority, much less can he properly be made to suffer loss by obedience.

The patent at bar was divided, and the applicant elected to prosecute that part of his invention now represented by the patent in suit, in a "separate application"—i. e., a "divisional" one. The matter is so pleaded, and from the bill the necessary legal inference is that every-thing material, both in specification and claims of the divisional application, was fully contained in the application originally filed. There is nothing of laches, estoppel, abandonment, or intervening rights suggested in this case. The solicitation of the patent ran smoothly for all we know, except for a difference of opinion between solicitor and examiner, as to how *many* patents the original disclosure justified.

The defendant has not answered, the facts at present stand as above set forth, but by motion, equivalent to a general demurrer, it is asserted, and has been held by the court below, that plaintiff must here allege (and subsequently prove) that the invention of this divisional application was not patented, described, in public use, nor on sale for more than two years prior to October 31, 1919. In other words, and in this case, the inventor might have made, used in public, and sold his invention on the day after he filed his application on June 7, 1916, and then, because he acquiesced in a divisional ruling in 1919, invalidated in limine whatever he requested by the "separate" application provided for by the rule and known to the profession long before the present code of patent practice. And this is said to be the peremptory rule of the Chapman Case, supra. We feel assured that no such rule exists.

First. There is no intent shown by that decision to overrule earlier cases dealing with divisional applications in no "hostile spirit." Some are cited with approval at page 137 of the report. Divisional and renewed applications (absent intervening rights) should logically be treated alike. See Godfrey v. Eames, 1 Wall. 317, 17 L. Ed. 684; Smith v. Goodyear, 93 U. S. 486, 23 L. Ed. 952.

Second. The decisions in this and other circuits,- distinctly holding the contrary of the rule asserted, were not overruled or adverted to. Victor, etc., v. American, etc., Co., 145 Fed. 350, 76 C. C. A. 180; General, etc., Co. v. Continental, etc., Co., 256 Fed. 660, 168 C. C. A. 54; Rosenwasser v. B. E. Mfg. Co. (C. C. A.) 264 Fed. 114. Some of these cases treat of renewed applications; however, they show the analogy, and we might rest decision, so far as we are concerned, on the last citation. It cannot be thought that the court intended to overset without comment the whole current of authority, something so firmly established that it had long passed unchallenged into text-books.

Third. The Chapman Case, in our opinion, did not decide, nor touch upon, the point at bar. As may be seen by examining the record of that litigation, it began with an examiner's ruling that Chapman was guilty of laches in not basing *any* claim on a disclosure he had made in a pending application, until some 20 months after Wintroath had obtained a patent for the same invention. It is this theory of laches that underlies and in truth constitutes the decision in Chapman's Case. The result is that Chapman was finally held not guilty of laches in taking (for interference with Wintroath) the latter's claim, and annexing the same to his specification, more than 1 year—i. e., 20 months—after Wintroath obtained a patent. Delay in action or laches was measured by the 2-year space of R. S. § 4886 (Comp. St. § 9430), and other sections of the patent law, and not by R. S. § 4894 (Comp. St. § 9438), as the lower court had ruled in Rowntree v. Sloan, 45 App. D. C. 207. But it must be borne in mind that this is reasoning merely from analogy; it is judge-made law, as distinguished from statute law; the statute is silent. Furthermore, it asserts agreement in result with the Patent Office ruling of long standing, which Rowntree v. Sloan, supra, had upset.

[5] The court below has stated appellee's position by the assertion that the Chapman Case "has held that the 2-year limitation for the filing of applications (R. S. § 4886) applied to a divisional as well as an original application." As thus stated, no such ruling can be found in the Supreme Court's opinion, and no justification for it can be found in the statutory language. But it is evidently possible to assert the highest court as holding that, where no claim was made in the original specification, a divisional application, making a claim already appropriated in substance by an issued patent, must be filed within 2 years of the publication of that patent. The reporter perhaps so understood the court (see first paragraph of syllabus), and the Seventh circuit seems to have accepted that view. Splitdorf, etc., Co. v. Webster, 283 Fed. 83, at page 93.

We think this an erroneous reading. There is no reason for any such special rule as to divisional applications; on reason, the objection to belated appropriations, in interference or otherwise, of claims of published patents, is just as valid when the appropriator is an original applicant, whose application is incapable of division. What the Office and all the courts were considering in the Chapman Case was the evil of applicants who had not claimed, watching the published art, and demanding interference with men whose patents quite likely suggested

to them, what they might have done. Such men can only be disciplined under existing statutes, by somewhat drastic imputations of laches, or establishing estoppels, and the Chapman decision has we think been so understood by the very court whose endeavors at discipline the Supreme Court found too drastic. For example, In re Nathan, 51 App. D. C. 347, 279 Fed. 925, pointing out that "no excuse is offered" by the divisional applicant for not filing within 2 years of issue of intervening patent. If the rule were not of assumed or imputed laches, but of statutory firmness, why refer to excuses? Also Ransdall v. Jahns, 51 App. D. C. 3, 273 Fed. 365, where no division of application was made, and (semble) none was possible, but the doctrine of Chapman's Case was applicable.

[6] We thus find no compulsion to depart from the obviously equitable rule, certainly long settled in this circuit, and we still think in the Supreme Court also, that in the absence of laches, estoppel, or intervening rights a divisional application relates back to the original from which it was carved, and will be regarded as having the filing date and priorities of that original. The ordinary difficulty with divided, renewed, and sometimes even amended applications, is that they are efforts to validate something that was not carved out of anything but second thoughts, and cannot be called amendments of any original. This case is wholly free from such objections.

Decree reversed, with costs, and cause remanded for further proceedings not inconsistent with this opinion.