## DIAMOND POWER SPECIALTY CORPORATION v. BAYER CO.

## BAYER CO. v. DIAMOND POWER SPECIALTY CORPORATION.

(Circuit Court of Appeals, Eighth Circuit. May 7, 1926.)

Nos. 7158, 7159.

**1. Patents 109—Insertion of new claims in application, if substance is disclosed in original specification and drawings, does not invalidate patent.**

The insertion of new claims in connection with a pending application is allowable, provided the substance of the claims was disclosed in the original specification and drawings.

**2. Patents 109.**

Delay in filing new claims did not create an estoppel, in the absence of intervening rights.

**3. Patents 109.**

Where the subject-matter of new claims was disclosed in the original specification and drawings, new oath was not required.

**4. Patents 110—Renewal application, made after lapse of grant for nonpayment of fees, is based on the original application, so far as relates to bar by prior use or publication more than two years previously (Rev. St. §§ 4886, 4897 [Comp. St. §§ 9430, 9443]).**

On forfeiture for nonpayment of fees after allowance of patent, the applicant has two years after such allowance within which to make a renewal application, under Rev. St. §§ 4886, 4897 (Comp. St. §§ 9430, 9443), and such renewal counts on the original application, so far as relates to the question of prior use or publication for more than two years.

**5. Patents 82—Patentee held not to have abandoned invention by publication of article describing it.**

Patentee, by publishing article which contained substantially same disclosure as his application, prior to intentional forfeiture of application by nonpayment of fees, and filing of renewal application containing additional claims, *held* not to have abandoned invention defined in such additional claims.

**6. Patents ☞65—Structure of prior patent cannot be modified, and then claimed as anticipation.**

In considering prior patents as anticipations, it is not permissible to modify the structures of such patents, and then claim the modified structures as anticipations.

**7. Patents ☞328—Garland, 1,416,553, for soot cleaner for boilers, held valid and infringed.**

The Garland patent, No. 1,416,553, for apparatus for cleaning soot from water tube boilers, claims 15 and 16, *held* not anticipated, valid, and infringed.

**8. Patents ☞234—Device, which does same work as that of patent in substantially the same way, infringed.**

A device, which does the same work as that of a patent in substantially the same way, and accomplishes the same result, is an infringement.

**9. Patents ☞328.**

The Bowers patent, No. 1,465,387, for boiler cleaner, claims 1, 2, and 3, *held* valid and infringed.

**10. Patents ☞328.**

The Magee patent, No. 1,060,923, for water tube blower, claims 6, 20, 21, 22, and 24, *held* valid and infringed.

**11. Patents ☞328.**

The Beebe and Bowers patent No. 1,343,654, for boiler cleaner, claims 4 and 5, *held* invalid for lack of invention.

**12. Patents ☞328.**

The Bayer patent, No. 1,028,180, for soot blower attachment, claim 7, *held* invalid for anticipation and want of novelty.

**13. Words and phrases—"Synchronism."**

Two things may be said to be operating in "synchronism," not merely when they operate simultaneously, but also when their cycles of operation bear a timed relation to each other.

Appeals from the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Suit in equity by the Diamond Power Specialty Corporation against the Bayer Company. From the decree, both parties appeal. Affirmed.

George F. Scull, of New York City, and Amasa C. Paul, of Minneapolis, Minn. (C. B. Belknap, of Detroit, Mich., and John H. Bruninga, of St. Louis, Mo., on the brief), for Diamond Power Specialty Corporation.

Harry A. Beimes, of St. Louis, Mo., for Bayer Company.

Before STONE, KENYON, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge. Two suits were brought by the Diamond Power Specialty Corporation against the Bayer Company in the court below. In one the bill alleged infringement by defendant of two patents belonging to plaintiff: 1,416,553, Garland, May 16, 1922, apparatus for blowing soot from the tubes of boilers, and 1,465,387, Bowers, August 21, 1923, for a boiler cleaner. In the second suit the bill alleged infringement by defendant of three patents belonging to plaintiff: 1,060,923, Magee, May 6, 1913, for a water tube blower; 1,231,276, McIlvane, June 26, 1917, for a boiler cleaner; and 1,343,654, Beebe and Bowers, June 15, 1920, for a boiler cleaner. Defendant answered in both suits, denying the validity of each of the patents, and also denying infringement. Later defendant amended its answer in the second suit, and set up a counterclaim, alleging that plaintiff was infringing a patent owned by defendant, No. 1,028,180, Bayer, June 4, 1912, for improvement in soot blower attachments. Plaintiff answered this counterclaim, denying the validity of the Bayer patent, and denying infringement thereof by plaintiff.

The two causes involving these six patents were consolidated for final hearing. The court by its decree adjudged claims 15 and 16 of the Garland patent valid and infringed; claims 1, 2, and 3 of the Bowers patent valid and infringed; claims 6, 20, 21, 22, and 24 of the Magee patent valid and infringed; claim 7 of the defendant's patent (Bayer) invalid. From so much of the decree, the defendant has appealed, No. 7159. The court also by its decree adjudged claims 4 and 5 of the Beebe and Bowers patent invalid; claim 1 of the McIlvane patent invalid; claim 2 of the McIlvane patent not infringed by defendant. From the part of the decree holding claims 4 and 5 of the Beebe and Bowers patent invalid, plaintiff has appealed, No. 7158. No appeal has been taken as to the McIlvane patent.

The Garland patent, No. 1,416,553, discloses an apparatus for blowing soot from the tubes of water tube boilers. It comprises a blower tube mounted in suitable bearings, so as to rotate about its longitudinal axis, and having a series of small nozzles spaced along its length, and a valve to control the supply of steam to the blower tube. The valve by suitable mechanism is made to operate in a timed relation with the rotation of the blower tube, so that the steam is admitted to the nozzles of the blower tube when they are directed to the part of the boiler desired to be cleaned. Claims 15 and 16 of the patent are here involved. Claim 15 reads:

"15. A soot-cleaning apparatus for boilers comprising in combination a blower mem-

ber having a series of laterally disposed outlets, a steam supply member in communication with said blower member, a valve for controlling the discharge of steam to said outlets, means for imparting movement to the blower member about its longitudinal axis whereby to direct the jets of steam to different portions of the boiler to clean the same, the said last-mentioned means being operatively associated with said valve whereby the valve automatically opens and closes in synchronism with the movement of the blower member and remains open during a predetermined movement of the blower member about its longitudinal axis."

Claim 16 adds a further element: "Means interconnecting the operation of said valve and blower member whereby upon the operation of one of them the other will be automatically operated."

The defenses set up to this patent are, first, estoppel. This is based largely on the history of the application in the Patent Office. The contention is that during the earlier stages of the prosecution of the application Garland insisted that the apparatus of his invention removed the soot by the so-called "puff" method; that is, by causing the steam to be forced through nozzles of the blowers in a series of puffs, and that having claimed this as his invention, and having allowed several years to elapse before filing claims 15 and 16, he is now estopped from claiming the invention defined in those claims. The contention cannot be sustained. It is true that Garland did in the early stages of the prosecution of his application lay great stress upon the "puff" method; but it is also true that later on, and before the defendant entered the field with its accused device, Garland had inserted other claims in connection with his application, and of these new claims two were allowed, being 15 and 16 of the patent in suit.

[1] The insertion of new claims in connection with a pending application is allowable, provided the substance of the claims was disclosed by the original specifications and drawings. Godfrey v. Eames, 1 Wall. 317, 324, 17 L. Ed. 684; Smith v. Goodyear, 93 U. S. 486, 499, 23 L. Ed. 952; Hobbs v. Beach, 180 U. S. 383, 396, 21 S. Ct. 409, 45 L. Ed. 586; Western Elec. Co. v. Sperry Co., 58 F. 186, 196, 7 C. C. A. 164; Bowers v. San Francisco Bridge Co. (C. C.) 69 F. 640; Cleveland Foundry Co. v. Detroit Vapor Stove Co., 131 F. 853, 68 C. C. A. 233; Victor Talking Machine Co. v. American Graphophone Co., 145 F. 350, 76 C. C. A. 180; Proudfit Co. v. Kalamazoo Co., 230 F. 120,

144 C. C. A. 418; General Elec. Co. v. Continental Fibre Co., 256 F. 660, 664, 168 C. C. A. 54.

[2] An examination of the drawings, specifications, and file wrapper of the Garland patent satisfies us that claims 15 and 16 come within the rule stated, and that the defense of estoppel cannot be maintained. The case of Webster Electric Co. v. Splitdorf Electrical Co., 264 U. S. 463, 44 S. Ct. 342, 68 L. Ed. 792, cited by defendant, is not applicable. In that case the original application for the Kane patent had been filed February 2, 1910. The patent had been issued November 14, 1916. A divisional application had been filed in 1914 or 1915, for the purpose of securing an interference with the Milton patent, issued May 12, 1914. The interference was decided in favor of the Kane patent. Subsequently, in 1915, another divisional application was filed by Kane, presenting claims copied from the Podlesak patent, issued March 4, 1913, and reissued February 9, 1915. This interference resulted in favor of the Podlesaks. Thereafter, in June, 1918, Kane filed an amendment, introducing two new and broader claims. These were allowed, and the patent to Kane issued, September 24, 1918. These two claims were brought into the Splitdorf suit, which had been commenced in 1915, by a supplemental bill filed October 25, 1918. The defense set up against these two claims was laches on the part of Kane. It was sustained. The Supreme Court in its opinion said:

" * * * Claims 7 and 8 were for the first time presented to the Patent Office, by an amendment to a divisional application eight years and four months after the filing of the original application, five years after the date of the original Podlesak patent, disclosing the subject-matter, and three years after the commencement of the present suit. * * * During all of this time their subject-matter was disclosed and in general use; and Kane and his assignee, so far as claims 7 and 8 are concerned, simply stood by and awaited developments. * * * The repeated assertion of interferences in narrower terms, resulting in delays incident to their determination, affords no just excuse for the failure to assert the broader claims, 7 and 8, at an earlier date. * * * Our conclusion, therefore, is that, in cases involving laches, equitable estoppel, or intervening private or public rights, the two-year time limit prima facie applies to divisional applications, and can only be avoided by proof of special circumstances justifying a longer delay. In other words, we follow in that re-

spect the analogy furnished by the patent reissue cases."

In the case at bar the situation is entirely dissimilar. There has been no prior patent covering the subject-matter of claims 15 and 16. There has been no copying of claims for interference purposes. There was no general use of the subject-matter of claims 15 and 16 prior to the issue of the Garland patent. These claims in their present form were inserted in the application as early as September 7, 1921, and in a general form as early as July and September, 1920. This was before Bayer began the alleged infringement herein complained of. In our opinion the facts and circumstances fall far short of bringing the case at bar within the ruling in the Webster Company Case.

[3] Another defense is that there was no oath to the subject-matter of claims 15 and 16. The answer to this defense is that, though the claims themselves were new, the subject-matter of the claims was disclosed in the original specifications and drawings, and therefore a new oath was not needed. De La Vergne Machine Co. v. Featherstone, 147 U. S. 209, 229, 13 S. Ct. 283, 37 L. Ed. 138; Camp Bros. & Co. v. Portable Wagon Dump & E. Co., 251 F. 603, 609, 163 C. C. A. 597; Kelsey Wheel Co. v. Universal Rim Co. (C. C. A.) 296 F. 616, 618; Heller Bros. Co. v. Crucible Steel Co. (C. C. A.) 297 F. 39, 43.

[4] Another defense is that these claims are invalid because of the publication by Garland on June 26, 1917, in "Power" of an article which contained substantially the same disclosure as his application for patent. This publication was more than a year after the filing of the original application, but was three years prior to the date of the renewal of his application, July 14, 1920. It is contended that the renewal application was barred, because it was not filed until more than two years had elapsed after the date of the publication. This contention loses sight of the distinction between an application that has been abandoned and one that has been merely forfeited for nonpayment of fee. In the latter case, a renewal application may be made at any time within two years after the allowance of the original application, pursuant to section 4897, R. S. (Comp. St. § 9443). When this is done, the application proceeds from the point where it was left in its prior history; in other words, such renewal application has the benefit of the original application, and the two-year statute, section 4886, R. S. (Comp. St. § 9430), must be reckoned from the date of the original application. Detroit Iron & Steel Co. v. Carey, 236 F. 924, 926, 150 C. C. A. 186, certiorari denied 242 U. S. 649, 37 S. Ct. 242, 61 L. Ed. 545.

The file wrapper of the Garland patent shows conclusively that the intention of Garland in allowing the first application to be forfeited was not to abandon the application, but to renew the same, with additional claims, which should secure protection for the whole invention. The forfeiture was deliberate and under advice of counsel. The original application had been filed February 7, 1916. Original allowance was made January 7, 1920. Forfeiture for nonpayment of fee followed. Renewal application was filed July 14, 1920. Patent was finally issued May 16, 1922. The dates of the original allowance, of the forfeiture, and of the renewal application are persuasive in themselves that there was no intention to abandon the application. The procedure which was followed was allowable. Bowers v. San Francisco Bridge Co., supra; Wells v. Honigmann, 267 F. 743, 50 App. D. C. 99.

The case of Chapman v. Wintroath, 252 U. S. 126, 40 S. Ct. 234, 64 L. Ed. 491, cited by defendant, is not in point. In the Chapman Case the real question was whether an inventor whose application disclosed, but did not claim, an invention which later was patented to another, was allowed two years after such patent issued within which to file a second or divisional application claiming the invention. The Supreme Court answered the question in the affirmative, reversing the lower court, which had held that the inventor had but one year, on account of a supposed analogy to the time allowed by statute (section 4894, R. S., as amended by the Act of March 3, 1897, 29 Stat. 693 [Comp. St. § 9438]) for completing or prosecuting applications. Not only does the decision in the Chapman Case not support the contention of appellee, because the question involved was not the same as in the case at bar, but the language of the court in its opinion in that case is directly adverse to appellee's contention here. The court said:

" * * * Not only have later or divisional applications not been dealt with in a hostile spirit by the courts, but, on the contrary, designed as they are to secure the patent to the first discoverer, they have been favored to the extent that, where an invention clearly disclosed in an application, as in this case, is not claimed therein, but is subsequently claimed in another application, the original will be deemed a constructive reduc-

tion of the invention to practice, and the later one will be given the filing date of the earlier, with all of its priority of right."

We conclude that the publication in "Power" did not render invalid the claims here in question.

[5] It is further contended in the brief on behalf of defendant that Garland abandoned the invention defined in claims 15 and 16, by reason of the publication in "Power." This contention might be disposed of by saying that no such defense was set up in the answer, nor notice given as required by section 4920, R. S., as amended by the Act of March 3, 1897 (29 Stat. 692 [Comp. St. § 9466]). However, we have considered the contention and find it without merit.

[6, 7] A further defense is anticipation by the Alexander patent, No. 848,082, March 26, 1907. This patent was a soot blower for fire tube boilers, not for water tube boilers. At either side of the boiler shell there was a pivot center, on which a pipe swung across the ends of the fire tubes. This pipe was provided with openings, which blew jets of steam into the fire tubes as it passed by them. The Alexander patent was before the Patent Office at the time of the allowance of claims 15 and 16 of the Garland patent. This strengthens ordinary presumption in favor of Garland. Fairbanks, Morse & Co. v. Stickney, 123 F. 79, 82, 59 C. C. A. 209 (C. C. A. 8); Canda v. Michigan Co., 124 F. 486, 493, 61 C. C. A. 194; American Caramel Co. v. Glen Rock Stamping Co. (D. C.) 201 F. 363, 366. An examination of the Alexander patent shows clearly that it does not disclose a blower member mounted to rotate upon its longitudinal axis, nor does it have "means for rotating such blower member," nor does it have "a steam-controlling valve associated with and operated by the blower operating means," so as to be automatically opened and closed by the means which rotates the blower member upon its longitudinal axis. It is true that, with certain changes, the Alexander device might be made closely similar to the devices of Garland and of Bowers; but, in considering prior patents as anticipations, it is not permissible to modify the structures disclosed by such patents, and then claim the modified structures as anticipations. Eames v. Andrews, 122 U. S. 40, 66, 7 S. Ct. 1073, 30 L. Ed. 1064; Topliff v. Topliff, 145 U. S. 156, 161, 12 S. Ct. 825, 36 L. Ed. 658; Hobbs v. Beach, 180 U. S. 383, 392, 21 S. Ct. 409, 45 L. Ed. 586; Canda v. Michigan Co., 124 F. 486, 61 C. C. A. 194; Ideal Stopper Co. v. Crown Cork, etc., Co., 131 F. 244, 65 C. C. A. 436; Owens Co. v. Twin City Separator Co., 168 F. 259, 265, 93 C. C. A. 561 (C. C. A. 8). Furthermore, the evidence as to the commercial success of Garland, apparently not due primarily to advertising, and the lack of showing that Alexander was ever used, go far toward resolving in favor of Garland any doubt that might exist as to lack of invention. We conclude that Alexander was not an anticipation of Garland.

Finally it is said that defendant's accused device is not an infringement of claims 15 and 16 of Garland. Claim 15 of Garland reads directly on the first form of defendant's accused device. Defendant's device has a blower member having a series of laterally disposed outlets. It has a steam supply member in communication with the blower member. It has a valve for controlling the discharge of steam to said outlets. It has means for imparting movement to the blower member about its longitudinal axis, whereby it directs the steam to different portions of the boiler, and said last-mentioned means are operatively associated with said valve, whereby the valve automatically opens and closes in synchronism with the movement of the blower member, and remains open during the predetermined arc movement of the blower member about its longitudinal axis. Claim 16 also reads directly on the first form of defendant's accused device.

It is contended that defendant's second form of accused device is saved from infringement of claims 15 and 16, because the valve in the second form does not open and close in synchronism with the movement of the blower member as required by claim 15, and that the second form does not have "means interconnecting the operation of said valve and blower member" of such character that "upon the operation of one of them the other will be automatically operated." This alleged escape of defendant's second form from infringement is due to a modification of the interconnecting means, between the valve and the blower element, as it existed in the first form. The other elements in the second form are the same as in the first form, or mechanical equivalents thereof. This modification in the second form consists in introducing a "lost motion" clutch between the chain sheave wheel ($M$) and the cam ($Q$) on the one hand, and the small gear ($D'$) on the other. See Fig. 2, Plate D. The result is that, when the chain sheave wheel is turned, the cam ($Q$) turns with the wheel for part of a revolution before the clutch operates and causes the sheave wheel shaft to turn. The

PLATE D

Fig. 2.

Fig. 3.

ment of the blower tube, as set forth in claim 15; nor can it be said in reference to the valve and the blower tube that "upon the operation of one of them the other will be automatically operated," as set forth in claim 16. We do not think the language of the claims should be so narrowly construed. The valve and the blower tube each have a cycle of operation consisting of several phases: the valve opens, remains open for a period, closes, and remains closed for a period; the blower tube begins to revolve, its nozzles pass through a predetermined arc, the nozzles pass out of the arc, and the blower tube ceases to revolve. Two things may be said to be operating in synchronism, not merely when they operate simultaneously, but also when their cycles of operation bear a timed relation to each other.

The gist of the invention defined in claims 15 and 16 is that the device has its elements so constructed and arranged that the valve shall be in the open phase of its cycle during the time that the nozzles of the blower tube are passing through the predetermined arc, and closed at other times. When the valve and the blower tube are operating in this fashion, it may properly be said that the valve opens and closes in synchronism with the movement of the blower tube; and it may also be fairly said in such case, if there be means interconnecting the operation of the valve and the blower tube, that upon the operation of the one the other will be automatically operated. The mere fact that in defendant's second form the valve can be made to open just before the blower tube begins to revolve does not prevent claims 15 and 16 reading on defendant's device. Fundamentally the elements of defendant's second form and of Garland are the same; fundamentally the elements perform the same functions, in the same way, and produce the same result. We think defendant's second form has not escaped infringement of claims 15 and 16 of Garland.

[8, 9] The Bowers patent, No. 1,465,387, is an improvement upon and a simplification of Garland. The result is a specific device in a simple compact form. In Bowers the valve controlling the steam is brought close to the end of the blower tube, and there are direct mechanical connections between the blower tube and the valve. In Garland there are two separate sources of power, one a motor for driving the shaft which controls the movement of the blower tube, the other an electric circuit for controlling the operation of the steam valve, which by being alternately

turning of the sheave wheel and the cam (Q) causes the valve to open. When the clutch takes hold, causing the shaft to turn, the blower tube revolves. The valve therefore opens just prior to the time when the blower tube begins to revolve, and similarly the valve does not close until just after the blower tube ceases to revolve.

[13] It is contended that, by reason of this action of the mechanism in defendant's second form, it cannot be said that the valve opens and closes in "synchronism" with the move-

opened and closed produces the so-called "puff" action. In Bowers this electrical source of power is discarded, and only one source of power used. The elements of Bowers, claim 1, are (1) a rotatable blower unit adapted to discharge steam jets; (2) a stationary supply pipe with its gooseneck; (3) a valve independent of the blower unit; (4) means to rotate the blower unit; (5) a rotary cam connected to said unit-rotating means and arranged to operate said valve for automatically supplying steam from the supply pipe to said unit while the jets are directed to predetermined portions of the boiler. This claim reads directly upon defendant's accused device, both first form and second. The second claim of Bowers has the first three elements the same as in the first claim; then (4) "means mounted on said blower unit to rotate said blower unit"; (5) "means operated by said first means to operate said valve." This claim reads directly on the first form of defendant's accused device, but not directly on the second. The third claim of Bowers has the first three elements the same as in claims 1 and 2; then (4) "mechanical connections forming a part of said unit and operating between said unit and said valve"; (5) "means to operate said unit and from the same means actuate the said connections to operate said valve to automatically supply steam or the like from said supply pipe to said unit while the jets are directed toward predetermined portions of the boiler." This claim reads directly on both forms of defendant's device.

The defense of invalidity of the Bowers patent is not insisted upon, but the contention is that the accused devices of defendant do not infringe. This defense is based on the misconception by defendant that in Bowers the cam must be mounted on the blower unit. There is nothing in the claims or in the specifications which requires this. The only limitation running through the claims seems to be that some part of the mechanical connections between the blower unit and the valve must form part of the blower unit itself. This is the case in both forms of defendant's accused device. The only reason why claim 2 of Bowers does not read directly on defendant's second form is because of the "lost motion" feature in the chain of connecting mechanism, and because the power is applied at some intermediate point in the chain. But the "lost motion" can be eliminated from defendant's second form without affecting its essentials, and the power can then be applied

to the large gear (D), causing that to operate the shaft (F) with the cam (Q), and to control the valve (R). See Figs. 2 and 3, Plate D. The elements of defendant's structure (second form) are plainly the equivalents of the elements of Bowers. The cam used in defendant is the equivalent of the cam used in Bowers. In both the cam forms part of the chain of mechanical connections between the valve and the blower tube. In both the same driving means drives both cam and blower unit. In both the cam is so arranged that steam is admitted through the valve only when the nozzles of the blower tube are directed toward predetermined parts of the boiler. Defendant's device and Bowers' device do the same work in substantially the same way, and accomplish substantially the same result. So far as the question of infringement is concerned, they may be considered the same. Machine Co. v. Murphy, 97 U. S. 120, 125, 24 L. Ed. 935; Bates v. Coe, 98 U. S. 31, 42, 25 L. Ed. 68; National Hollow B. B. Co. v. Interchangeable B. B. Co., 106 F. 693, 711, 45 C. C. A. 544 (C. C. A. 8); Dowagiac Co. v. Minn. Moline Plow Co., 118 F. 136, 141, 55 C. C. A. 86 (C. C. A. 8). We think that all three claims of Bowers are infringed by defendant.

[10] The Magee patent, No. 1,060,923, May 6, 1913, is for a water tube blower. More specifically, the patent is for an invention by which the blower tube may be maintained at a relatively low temperature by circulating a cooling medium around it. Claims 6, 20, 21, 22, and 24 are involved. Claim 21 may be taken as typical of the others. Its elements are (1) a blower, comprising a casing having separate inlets for steam and a cooling agent; (2) a blower tube, communicating with said steam inlet and having jet nozzles; (3) means for rotating the blower tube; (4) a cooling jacket, surrounding the blower tube, communicating with said cooling agent inlet, and having openings through which said jet nozzles pass; (5) means independent of said nozzles for transmitting the rotary movement of the blower tube to said jacket.

It is contended that Magee is invalid for lack of invention over Fitzgerald, 509,800; Thomas, 542,294; and Fleming, 907,111. No one of these is in the same art with Magee; i. e., of soot blowers. Thomas and Fleming show merely hollow grate bars, with air circulating through them to keep them cool. Fitzgerald shows a means of supplying auxiliary combustion air to a furnace, as follows: A large tube filled with boiler water

extends nearly the length of the fire box of a locomotive; two smaller tubes lie within the large one, and have nipples extending through the wall of the larger one; through these small tubes air is fed to the fire box and increases the combustion. The tubes are not concentric, and it is not possible to rotate them. But it is indispensable that the blower tube in a successful soot blower be rotatable, and Magee provided an arrangement by which the blower tube could be rotated through as great an arc as desired, and still have a cooling jacket around it. There is no suggestion of this in Fitzgerald.

That defendant's device is an infringement of Magee is clear. The claims of Magee read directly on defendant's device, the chief differences being that in Magee the *buttons,* which hold the inner and outer tubes concentric and cause one to rotate with the other, are attached to the outer tube or jacket, while in defendant they are attached to the inner or blower tube; and in Magee the expansion joint, which allows both tubes to expand relatively to each other, is in the inner or blower tube, while in defendant it is in the jacket or outer tube. These changed forms are mere mechanical equivalents.

It is claimed that defendant's device does not infringe, because it has no separate inlet for the cooling fluid. Instead of an inlet strictly so called, defendant's device has one end of the jacket tube left open. Plainly this is an equivalent of the inlet of Magee. Differences and changes of the character noted are not sufficient to avoid infringement. Disc Grader & Plow Co. v. Austin-Western Road Machinery Co., 254 F. 430, 433, 166 C. C. A. 62 (C. C. A. 8); Columbia Wire Co. v. Kokomo Co., 143 F. 116, 120, 74 C. C. A. 310; Pittsburgh Water H. Co. v. Beler Co., 228 F. 674, 677, 143 C. C. A. 196. We hold that claims 6, 20, 21, 22, and 24 of the Magee patent are valid, and that they are infringed by defendant's structures.

[11] Claims 4 and 5 of the Beebe and Bowers patent, No. 1,343,654, June 15, 1920, were held invalid by the trial court for lack of novelty. They were also held anticipated by Hamann, No. 955,871. The alleged invention relates specifically to the positioning of a soot blower in relation to a horizontal water tube boiler. In water tube boilers the bank of inclined water tubes is generally divided by baffles or partitions, which divide the boiler into so-called passes. The water tubes at the bottom of the first pass are naturally subjected to the greatest heat. As the gases go from the first pass into the second, they become cooler, and the pipes in the second pass are therefore subject to less heat.

The evidence tends to show that prior to the Beebe and Bowers patent it had been impracticable to properly clean the pipes in the first pass, because the soot blower could be maintained there only a short period of time before burning out, on account of being subjected to great heat. Even when the soot blower was protected by a trough-like projection, as in Hamann, it lasted but a short time. Beebe and Bowers located the blower in the first pass, beneath the water tubes, behind and in close proximity to the inner wall of the header or water leg, and having a protection or guard for the blower positioned directly there beneath. In the Hamann device the blower was located on the opposite side of the pass from the header or water leg.

The chief difference between the Beebe and Bowers device and the Hamann device was the change of position of the blower. The evidence tends to show that this change of position prolonged the life of the blower, doubtless because the new position was cooler by reason of the water in the water leg. The introduction of "calorized metal" in the construction of the blower contributed to the same result. The trial court held that the change in positioning the blower was a matter which involved no invention, but which would have suggested itself to any mechanic. This was the original holding of the Examiner in the Patent Office, and the claims were rejected repeatedly for that reason. Nevertheless, after appeal and after rehearing, and in view of affidavit evidence produced tending to show great utility in the Beebe and Bowers device, the patent was granted. The sole question is whether it required invention to move the Hamann blower from the Hamann position to the Beebe and Bowers position. After a careful consideration of these two patents, together with Bayer patent, 900,078, which shows a positioning of the blower similar to that in Beebe and Bowers, though in a somewhat different structure, we have reached the conclusion that the change of position did not involve invention, and that claims 4 and 5 of the Beebe and Bowers patent are invalid for lack of invention.

[12] The Bayer patent, No. 1,028,180, June 4, 1912, is for a soot blower attachment. The seventh claim is relied upon. It reads:

"7. In combination with a boiler furnace wall provided with an opening, a blower

member traversing said opening, and a sliding shield disposed about said member and covering the opening."

Its elements are (1) a boiler furnace wall with an opening; (2) a blower member traversing said opening; (3) a sliding shield disposed about said member and covering the opening. It is plain that patentable novelty, if any, must rest in the shield element. Such a shield by itself was unquestionably old in the art of covering openings in walls and floors through which pass steam pipes or hot-water pipes.

Further, this element in an equivalent combination is found in Green, 649, 445, May 15, 1900, claim 9 of which reads:

"9. A suitable frame extending around the opening in the fire box of a boiler having flanges and shoulders for connecting the frame to the double plates of the boiler, a vertically slidable cover to close the opening in the fire box, a nozzle adjustably connected thereto, a water jacket surrounding the nozzle, and a system of steam and water pipes connecting respectively with the nozzle and with the water jacket thereof, substantially as and for the purpose specified."

Claim 7 of Bayer reads clearly on the Green disclosure. Bayer has a boiler furnace wall with a hole in it; Green has a fire box wall with a hole in it. Bayer has a blower member traversing the opening; Green has the same. Bayer has the sliding shield about the member; Green has a slidable cover about the member. The functioning is the same; the result is the same. We hold that Bayer is invalid for lack of patentable novelty, and because of anticipation by Green.

To sum up, we hold claims 15 and 16 of Garland, 1,416,553, are valid and infringed; claims 1, 2, and 3 of Bowers, 1,465,387, valid and infringed; claims 6, 20, 21, 22, and 24 of Magee, 1,060,923, valid and infringed; claims 4 and 5 of Beebe and Bowers, 1,343,-654, invalid for lack of invention; claim 7 of Bayer, 1,028,180, invalid for lack of novelty and because of anticipation.

In view of the foregoing conclusions, it becomes unnecessary to pass upon the motion for a restraining order which has been filed by the Bayer Company in this court subsequent to the submission of the appeals. No costs or attorney's fees allowed.

Decree affirmed.