## SAMSON–UNITED CORPORATION v. EMANUEL et al.
### No. 216.

Circuit Court of Appeals, Second Circuit.
Feb. 26, 1940.

Pennie, Davis, Marvin & Edmonds, of New York City (W. Brown Morton and Raymond B. Canfield, both of New York City, of counsel), for plaintiff-appellant.

Roland A. Anderson, of New York City (Nathan Heard and Frederick A. Tennant, both of Boston, Mass., of counsel), for appellee.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff sued a merchant who sold electric fans in the Southern District of New York which were alleged to infringe claims of U. S. Patent No. 2,095,223, granted to it, as assignor, on October 5, 1937 and which it now owns. The manufacturer of the fans, Signal Manufacturing Co. Inc., intervened and assumed the defense. As the parties have stipulated to that effect, we now will dispose of the appeal as if the order denying the preliminary injunction were a final decree dismissing the bill for non-infringement.

All of the claims in suit, one to seven inclusive and eighteen, were held valid and infringed on a former appeal from a decree in a suit on this patent. Samson-United Corporation v. Sears, Roebuck & Co. Inc., 2 Cir., 103 F.2d 312. The present defendants have also contested their validity but have put forth nothing new on that issue which requires discussion and we now adhere to our former decision on that.

The patent specifications were drawn to an electric fan like those then in common use with the exception of the blades which were made of rubber or other resilient material so cupped by having their bases inserted in arcuate slots in the fan hub that they were given sufficient ability to displace air satisfactorily when the fan was running and at the same time were so pliable that they could be used safely without any guard screen. They would also resume their normal shape after being distorted by contact with such objects as might ordinarily be expected to get near enough to interfere with them in operation. These desirable features were imparted to the fan blades by the manner in which they were attached to the hub. Others had previously recognized the desirability of having electric fan blades so made that the danger of injury from them would be practically removed and, as might have been expected, attempts to make them of resilient material like rubber were not new. None, however, had met with any success worth the name until this patentee invented his fan and then its merit won quick recognition, especially in the small sizes which were suitable for defrosting the windshields of automobiles.

What he did was to take a well-known type of fan; make its blades of a well-known material; shape them as metal had long been shaped for fan blades and in doing so preserved a sufficient amount of the natural pliability of the material to keep the blades practically harmless in operation while adding sufficient stiffness to them to make them efficient in use. Though the change from the old was structurally slight, it was great in terms of accomplishment.

We were careful to place the emphasis before, not on the use of rubber or any other resilient material for fan blades, but on the way such blades were attached to the hub to give them their new and desirable characteristics. Though the invention was embraced within that rather narrow field, it fills it and there should be a recognized range of equivalents adequate to protect it. Hillard v. Fisher Book Typewriter Co., 2 Cir., 159 F. 439. The prior art, as to which reference is now made to our former opinion, does not press so closely upon the invention that it must be held so straitly to the precise manner of fan blade attachment the patentee used that the patent will be deprived of any real substance. The claims themselves are not so limited either in terms or by the specifications.

The accused fan is to all intents and purposes the fan of the patent. The only difference lies in the fact that the necessary stiffening of the base of the fan blade and the required curvature are built into it before attachment to the hub instead of being imparted to at the time of and by the attachment. This has been accomplished by the simple expedient of making a metal fin of the right size and curvature; vulcanizing it into the rubber base of the blade and then attaching the blade to the hub by metal tabs on the fin which are put into suitably placed holes in the hub and twisted over to make them hold the cupped blade tightly to the hub. What has been done is the equivalent of what the patentee disclosed though it has been brought about in separate stages instead of all at the time the blades are attached to the hub. A metal piece has been added to the base of the rubber blade to do the work in part which was done by the slots in the hub of the patented fan; the tabs do the remainder by holding

the blade to the hub as the blades of the patented fan are held by the pressure of the sides of the slots and the ribs on the blade bases. Putting a metal stiffener within the rubber base is an equivalent of the clamping action of the sides of the slots upon the base of a blade to give it the needed firmness; and curving the inserted metal, either before or after it is vulcanized into the rubber, to cup the blade is also an equivalent method of curving the blade itself.

It is true that metal fan blades of the shape the blades of the patented fan assumed when put into the hub slots were old and so was the method of attaching them to the hub by tabs put into holes and twisted over. But when rubber blades were used it took more than a mere change of material from metal to rubber and needed what the patentee disclosed to make them satisfactory. He did it by embedding the rubber base of the blade in the metal of the hub in a slot so shaped that pressure would deform the blade as desired. The defendant has done it by embedding a piece of metal, later to be made virtually a part of the hub, in the rubber base of the blade. To put metal into the rubber instead of the rubber into the metal is not enough to avoid infringement. See, Walker v. Giles, 2 Cir., 218 F. 637; Telescope Cot Bed Co. v. Gold Medal Camp Furniture Mfg. Co., 2 Cir., 229 F. 1002. From a mechanical standpoint, the same thing was done in substantially the way the specifications of the patent taught how it could be done and that makes out infringement. General Electric Co. v. Continental Fibre Co., 2 Cir., 256 F. 660.

Reversed and remanded.